## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX TORSTORFF, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MYNARIC AG, MUSTAFA VEZIROGLU, and STEFAN BERNDT-VON BÜLOW, | |
| Defendants. | |

Plaintiff Alex Torstorff ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Mynaric AG ("Mynaric" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Mynaric securities between June 20, 2024 and October 7, 2024, both dates inclusive (the "Class Period"), seeking to

1

recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Mynaric develops and manufactures laser communication products for aerospace-based communication networks for government and commercial markets in the U.S. and internationally.  The Company's line of products includes, *inter alia*, its CONDOR series of optical inter-satellite link flight terminals for satellite-to-satellite communications in space.

3.      In June 2024, Mynaric provided guidance for its fiscal full year ("FY") 2024 financial results, including, *inter alia*, revenue of between €50 to €70 million and an operating loss of between €40 to €30 million.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) lower-than-expected production yields and component supplier shortages of key components were causing production delays for Mynaric's CONDOR Mk3 product; (ii) the foregoing issues were likely to have a material negative impact on the Company's revenue growth and cause the Company to incur an operating loss; (iii) as a result, Mynaric was unlikely to meet its own previously issued financial guidance for FY 2024; (iv) accordingly, the Company's business and/or financial prospects were overstated; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On August 20, 2024, Mynaric issued a press release providing an update to its FY 2024 guidance, advising that "the company now expects full-year 2024 IFRS-15 revenue to range between EUR 16.0 million to EUR 24.0 million compared to previous guidance of a range between

EUR 50.0 million to EUR 70.0 million", citing "production delays of CONDOR Mk3 caused by lower than expected production yields and component supplier shortages of key components"; and that "the company now expects full-year 2024 operating loss to range between a loss of EUR 55.0 million to EUR 50.0 million compared to previous guidance of a range between a loss of EUR 40.0 million to EUR 30.0 million", citing "the lower than expected revenue and higher than expected production costs due to lower yields."

6.      In a separate press release issued that same day, Mynaric "announce[d] the voluntary departure of [the Company's Chief Financial Officer ("CFO") Defendant Stefan Berndt-von Bülow ("Bülow")] for personal reasons, effective last week."

7.      On this news, Mynaric's American Depository Share ("ADS") price fell $2.32 per ADS, or 55.9%, to close at $1.83 per ADS on August 20, 2024.

8.      Then, on August 26, 2024, Mynaric announced that its "Supervisory Board . . . agreed to terminate in mutual consent the appointment of [the Company's Chief Executive Officer ("CEO") Defendant Mustafa Veziroglu ("Veziroglu")] as chairman and member of the Management Board of Mynaric AG with immediate effect," and that "[w]ith a view to the latest changes in the Management Board," the annual general meeting of Mynaric would be postponed.

9.      On this news, Mynaric's ADS price fell $0.11 per ADS, or 9.73%, to close at $1.02 per ADS on August 27, 2024.

10.      Finally, on October 8, 2024, Mynaric announced that it had received a deficiency letter from the Listing Qualifications Department of The Nasdaq Stock Market Inc. notifying that Mynaric was "no longer in compliance with the Nasdaq continued listing criteria, including the Nasdaq Listing Rule 5450(b)(2)(A) due to its failure to maintain a minimum of $50 million in

market value of listed securities[,]" and that "Mynaric does not meet the alternatives of total assets and total revenue for continued listing."

11.　　On this news, Mynaric's ADS price fell $0.07 per ADS, or 4.37%, to close at $1.53 per ADS on October 8, 2024.

12.　　As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.　　The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.　　This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

15.　　Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to Mynaric's most recently filed Annual Report with the SEC, as of December 31, 2023, there were 6,318,322 of the Company's ordinary shares outstanding.  Mynaric's ADSs trade on the Nasdaq Global Select Market ("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands of investors in Mynaric ADSs located within the U.S., some of whom undoubtedly reside in this Judicial District.

16.　　In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.     Plaintiff, as set forth in the attached Certification, acquired Mynaric securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.     Defendant Mynaric is organized under the laws of the Federal Republic of Germany ("Germany") with principal executive offices located at Bertha-Kipfmüller Straße 2-8, 81249 München, Germany.  The Company's ADSs trade in an efficient market on the NASDAQ under the ticker symbol "MYNA."

19.     Defendant Veziroglu served as Mynaric's CEO at all relevant times.

20.     Defendant Bülow served as Mynaric's CFO at all relevant times.

21.     Defendants Veziroglu and Bülow are collectively referred to herein as the "Individual Defendants."

22.     The Individual Defendants possessed the power and authority to control the contents of Mynaric's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Mynaric's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Mynaric, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

23.     Mynaric and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Mynaric develops and manufactures laser communication products for aerospace-based communication networks for government and commercial markets in the U.S. and internationally.  The Company's line of products includes, *inter alia*, its CONDOR series of optical inter-satellite link flight terminals for satellite-to-satellite communications in space.

### Materially False and Misleading Statements Issued During the Class Period

25.     The Class Period begins on June 20, 2024, when Mynaric issued a press release during intraday trading hours announcing its fiscal FY 2023 results and outlook for FY 2024 (the "FY 2023 Earnings Release").  The FY 2023 Earnings Release stated, in relevant part:

Key 2023 and 2024 Highlights

- Optical Communications Terminal Backlog at December 31, 2023 of 794 units (256 units as of December 31, 2022) and 829 as of June 20, 2024

- Cash in from Customer Contracts of EUR 49.2million in 2023 (EUR 18.3 million as of December 31, 2022)

- Multiple wins with key customers such as Northrop Grumman, York Space Systems and Loft Federal for CONDOR Mk3 terminals, key contract with DARPA and the German government for multiple projects and a contract with commercial Japan-based constellation

- Initial CONDOR Mk3 shipment achieved at the end of Q1 2024.

- In April 2024, secured additional US$ 20 million deferred draw term loan facility from primary lender to support working capital

26.     Further, the FY 2023 Earnings Release quoted Defendant Veziroglu as stating, in relevant part:

2023 marked a milestone year for Mynaric as we ended the year with record backlog of optical terminals, were awarded business with many marquee customers and prepared for serial production . . . . In the first quarter of 2024, we completed our first CONDOR Mk3 shipment marking another significant milestone for the company.

27.    Finally, the FY 2023 Earnings Release also stated that "Mynaric is providing the following key performance indicators outlook for 2024:"

In Euro millions and actual terminal units

| | |
|---|---|
| **Revenue** | **€50 - €70** |
| **Operating Loss** | **(€40) - (€30)** |
| **Optical Communications Terminal Backlog** | **800 - 1,000** |
| **Cash in from Customer Contracts** | **€65 - €100** |

***For the fiscal year 2024, our revenue outlook is driven by shipments of CONDOR Mk3 units to multiple customers***. This outlook assumes we are able to ramp to our current production plans. This outlook remains at the lower end of the most recent published analyst estimates for 2024 (for which the arithmetic average is approximately €65 million).

We expect our operating loss for the fiscal year 2024 to decrease significantly from last year's level due to higher revenue levels. This outlook remains in-line with the most recent published analyst estimates for 2024 (for which the arithmetic average is approximately -€36 million).

(Emphasis added.)

28.    That same day, Mynaric hosted an earnings call with investors and analysts to discuss the Company's fiscal Q4 2023 results (the "Q4 2023 Earnings Call").  During the scripted portion of the Q4 2023 Earnings Call, Defendant Veziroglu stated, in relevant part:

Mynaric reported solid results for the full year of 2023. Order momentum was excellent in '23 and early 2024 as evidenced by record backlog of terminal units. Our team did a great job in landing new customers as well as winning repeat business with existing customers. Our current backlog now stands at 829 terminal units, including our most recent award from Rocket Labs in support of the SDA Tranche 2 transport layer program.

As a reminder, just a few short years ago, our backlog was standing at 40 units. The increase we reported over the past couple of years a testament to the strength of our

core technology as well as the execution and high degree of customer service on our sales team. It also demonstrates the strong belief our customers have placed in us to support their next-generation satellite communication networks.

Our funnel of new opportunities remain[s] very strong across both the government and commercial sectors. We remain disciplined in our investment strategy to support the future growth of the business, and our pipeline of opportunities remain the highest in our history.

***

Within the SDA, we estimate we have the highest -- largest market share of optical terminals, and we are now in the early phase of our manufacturing grant to meet the needs of our multiple prime customers for this program. Albeit somewhat slowly, we are finally seeing movement in other government constellations.

***

Last year, we talked about three focus areas for Mynaric: production readiness, continuous process improvement and streamlining the product development process. With the completion of our first product shipment at the end of first quarter of this year, we've now moved on to the early phase of the big push for our production ramp.

On the process of improvement front, the team continues to refine the production process as we look to ramp shipments throughout the remainder of this year. We made significant progress in this area in just a few short months, but a lot more work is still left to do to meet the production levels we need to achieve.

Process improvement isn't our only focus. In November, we moved into a new 11,000 square meters or 120,000 square feet facility in Munich. This facility is significantly larger than our prior production facility and also allowed us to combine most of our product development, administration and production capabilities, all within one building. This not only gives us the capacity to support higher volumes of unit shipments, but also improves our product development as our product development engineers are now only a short walk away from the production lines.

***

I'm confident we are well prepared for the opportunity ahead, and I believe we have the right team with the right solutions and the operational structure and capacity to capitalize on the opportunity in front of us.

29.    Also during the scripted portion of the Q4 2023 Earnings Call, Defendant

Bülow stated, in relevant part:

> Excluding the write-down, cost of material would have decreased by 37%
> compared to the year ago period. As our production rate increased substantially
> over the coming months and into the next year, we expect our cost of material to
> increase. *We have implemented a number of internal initiatives to reduce the cost*
> *of materials for the CONDOR Mk3 terminals. Over time, that should provide*
> *positive benefits over the coming years as shipments accelerate*.
>
> ***
>
> Now let me walk you through our guidance for 2024. For 2024, we are adding
> specific numeric guidance for revenue and operating loss to our prior key
> performance indicator guidance. Given we are now shifting from a preproduction
> company to a full production ramp, our guidance metrics going forward will reflect
> this transition. In addition, the outlook is based on the current projected production
> ramp and current liquidity projection.
>
> ***
>
> *For the full-year 2024, we expect revenue to a range between EUR50 million and*
> *EUR70 million, driven by shipment of CONDOR Mk3 units to multiple*
> *customers*. This assumes we are able to ramp to our current production plans. *We*
> *expect our operating loss for the year to decrease significantly from last year's*
> *level and range between a loss of EUR40 million and a loss of EUR30 million.*
> *Importantly, we believe our production level should help us achieving a*
> *breakeven EBITDA level by the end of the year on a run rate basis*.

(Emphases added.)

30.    The statements referenced in ¶¶ 25-29 were materially false and misleading because

Defendants made false and/or misleading statements, as well as failed to disclose material adverse

facts about the Company's business, operations, and prospects.  Specifically, Defendants made

false and/or misleading statements and/or failed to disclose that: (i) lower-than-expected

production yields and component supplier shortages of key components were causing production

delays for Mynaric's CONDOR Mk3 product; (ii) the foregoing issues were likely to have a

material negative impact on the Company's revenue growth and cause the Company to incur an

operating loss; (iii) as a result, Mynaric was unlikely to meet its own previously issued financial guidance for FY 2024; (iv) accordingly, the Company's business and/or financial prospects were overstated; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

31.    In addition, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Mynaric to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Defendants' failure to disclose that the Company was experiencing production delays for its CONDOR Mk3 product violated Item 303 because this issue represented a known trend or uncertainty that was likely to have a material unfavorable impact on the Company's business and financial results.

### The Truth Emerges

32.    On August 20, 2024, the Company issued a press release entitled "Mynaric Lowers Revenue, Cash-In from Customer Contracts and Increases Operating Loss Guidance for 2024 Due to Slower than Expected Production Ramp and Higher Production Costs."  The press release stated, in relevant part:

> Mynaric [. . .] has today resolved an update to full-year 2024 guidance published on June 20, 2024, for its key financial performance metrics:
>
> *IFRS-15 revenue: the company now expects full-year 2024 IFRS-15 revenue to range between EUR 16.0 million to EUR 24.0 million compared to previous guidance of a range between EUR 50.0 million to EUR 70.0 million. The guidance decrease is due to production delays of CONDOR Mk3 caused by lower than expected production yields and component supplier shortages of key components.*
>
> *Operating loss: the company now expects full-year 2024 operating loss to range between a loss of EUR 55.0 million to EUR 50.0 million compared to previous guidance of a range between a loss of EUR 40.0 million to EUR 30.0 million. The*

*guidance decrease is mainly driven by the lower than expected revenue and higher than expected production costs due to lower yields*.

Cash-In from Customer Contracts[]: the company now expects full-year 2024 guidance to range between EUR 45.0 million to EUR 50.0 million compared to the previously communicated guidance of a range between EUR 65 million to EUR 100 million. The guidance decrease is mainly driven by lower shipments and delays in the program awards relative to previous expectations.

*** 

As of August 16, 2024, the Company had cash and cash equivalents on hand of EUR 6.3 million. With the lower than previously expected revenue and cash-in from customers for fiscal year 2024, we will need to pursue additional capital sources to secure our on-going operations and production ramp. At this time, we are evaluating a number of different strategic options to address our near-term capital needs.

(Emphasis added.)

33.    In a separate press release issued that same day, Mynaric "announce[d] the voluntary departure of [Defendant] Bülow for personal reasons, effective last week."

34.    Following these announcements, Mynaric's ADS price fell $2.32 per ADS, or 55.9%, to close at $1.83 per ADS on August 20, 2024.

35.    Then, on August 26, 2024, Mynaric issued a press release entitled "Departure of Mustafa Veziroglu from the Management Board and appointment of Andreas Reif as Chief Restructuring Officer."  The press release stated, in relevant part:

[Defendant] Veziroglu, the chairman of the Management Board of Mynaric AG [. . .] and the Supervisory Board of Mynaric AG today agreed to terminate in mutual consent the appointment of Mr. Veziroglu as chairman and member of the Management Board of Mynaric AG with immediate effect.

*** 

With a view to the latest changes in the Management Board, the annual general meeting of Mynaric AG, scheduled for August 29, 2024, shall be postponed.

36.    On this news, Mynaric's ADS price fell $0.11 per ADS, or $9.73%, to close at $1.02 per ADS on August 27, 2024.

37.    Finally, on October 8, 2024, the Company issued a press release entitled "Mynaric Announces Receipt of Deficiency Letter from Nasdaq."  The press release stated, in relevant part:

> Mynaric [. . .] today announced that it received a notification letter dated October 2, 2024 (the "Deficiency Letter") from the Listing Qualifications Department of The Nasdaq Stock Market Inc. (the "Nasdaq") notifying that Mynaric is no longer in compliance with the Nasdaq continued listing criteria, including the Nasdaq Listing Rule 5450(b)(2)(A) due to its failure to maintain a minimum of $50 million in market value of listed securities (the "MVLS Requirement"). Nasdaq also determined that Mynaric does not meet the alternatives of total assets and total revenue for continued listing.
>
> ***
>
> The Deficiency Letter provided that, in accordance with Nasdaq Listing Rule 5810(c)(3)(C), Mynaric has a period of 180 calendar days from the date of the Deficiency Letter, or until March 31, 2025, to regain compliance with the MVLS Requirement. During this period, the ADS will continue to trade on Nasdaq. Nasdaq will deem Mynaric to have regained compliance with the MVLS Requirement if at any time during this compliance period Mynaric's MVLS closes at $50,000,000 or more for a minimum of ten consecutive business days.
>
> In the event Mynaric does not regain compliance with the MVLS Requirement by March 31, 2025, Mynaric will receive written notification from Nasdaq that Mynaric's ADS are subject to delisting. At that time, Mynaric may appeal the relevant delisting determination to a hearings panel pursuant to the procedures set forth in the applicable Nasdaq Listing Rules. However, there can be no assurance, if Mynaric does appeal the delisting determination by Nasdaq to the hearings panel, that such appeal would be successful. In such event, Mynaric may also seek to apply for a transfer to The Nasdaq Capital Market if it meets the requirements for continued listing thereon.
>
> Mynaric is reviewing its options for regaining compliance with the MVLS Requirement and for remedying other future potential non-compliances with Nasdaq continued listing requirements. There can be no assurance that Mynaric will be able to regain compliance with the MVLS Requirement or other Nasdaq continued listing requirements in a timely fashion, in which case its securities would be delisted from Nasdaq.

38.     On this news, Mynaric's ADS price fell $0.07 per ADS, or 4.37%, to close at $1.53 per ADS on October 8, 2024.

39.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

40.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Mynaric securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Mynaric securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can

be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Mynaric or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Mynaric;

- whether the Individual Defendants caused Mynaric to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Mynaric securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

47.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Mynaric securities are traded in an efficient market;

- the Company's ADSs were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Mynaric securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

15

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

50.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Mynaric securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Mynaric securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Mynaric securities.  Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Mynaric's finances and business prospects.

54.     By virtue of their positions at Mynaric, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Mynaric, the Individual Defendants had knowledge of the details of Mynaric's internal affairs.

56.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Mynaric.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Mynaric's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Mynaric securities was artificially inflated throughout the Class Period.  In

ignorance of the adverse facts concerning Mynaric's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Mynaric securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57.     During the Class Period, Mynaric securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Mynaric securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Mynaric securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Mynaric securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

60.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of Mynaric, and conducted and participated, directly and indirectly, in the conduct of Mynaric's business affairs.  Because of their senior positions, they knew the adverse non-public information about Mynaric's misstatement of income and expenses and false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Mynaric's financial condition and results of operations, and to correct promptly any public statements issued by Mynaric which had become materially false or misleading.

63.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Mynaric disseminated in the marketplace during the Class Period concerning Mynaric's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Mynaric to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Mynaric within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Mynaric securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Mynaric.  By reason of their senior management positions and/or being directors of Mynaric, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Mynaric to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Mynaric and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Mynaric.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  October 30, 2024                         Respectfully submitted,

                                                POMERANTZ LLP

                                                */s/ Jeremy A. Lieberman*
                                                Jeremy A. Lieberman
                                                J. Alexander Hood II

Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, _Alex Torstorff_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Mynaric AG ("Mynaric") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Mynaric securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Mynaric securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    The attached sheet lists all of my transactions in Mynaric securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** __September 26, 2024_____
                         **(Date)**

                                     Signed by:

_____
                                 **(Signature)**

_____
              Alex Torstorff

              **(Type or Print Name)**

**Mynaric AG (MYNA)**                                                      **Alex Torstorff**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 7/2/2024 | 375 | $3.9500 |
| Purchase/Acquisition | 7/8/2024 | 3,000 | $4.2000 |
| Purchase/Acquisition | 7/10/2024 | 583 | $3.8600 |
| Purchase/Acquisition | 7/18/2024 | 1,000 | $4.2000 |
| Purchase/Acquisition | 7/29/2024 | 528 | $4.0300 |
| Purchase/Acquisition | 7/29/2024 | 338 | $4.1800 |
| Purchase/Acquisition | 7/29/2024 | 5 | $4.2000 |
| Purchase/Acquisition | 7/29/2024 | 4 | $4.2300 |
| Purchase/Acquisition | 7/29/2024 | 3,325 | $4.2800 |
| Purchase/Acquisition | 7/29/2024 | 13 | $4.0500 |
| Purchase/Acquisition | 7/29/2024 | 8 | $4.0500 |
| Purchase/Acquisition | 7/29/2024 | 5 | $4.0700 |
| Purchase/Acquisition | 7/30/2024 | 4,000 | $4.2800 |
| Purchase/Acquisition | 8/6/2024 | 3,000 | $4.1100 |