**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEX TORSTORFF, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MYNARIC AG, MUSTAFA VEZIROGLU, and STEFAN BERNDT-VON BÜLOW, <br><br> Defendants. | **Case No. 1:24-cv-07602-KAM-CLP** <br><br> **CLASS ACTION** <br><br> Hon. Kiyo A. Matsumoto <br> Hon. Cheryl L. Pollak |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

   I.   PRELIMINARY STATEMENT ...............................................................................1

  II.  SUMMARY OF THE LITIGATION AND SETTLEMENT.......................................2

        A.  Procedural History ......................................................................................2

        B.  The Terms of the Settlement.......................................................................3

 III.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............................5

        A.  The Settlement Satisfies the Factors for Approval under Rule 23(e)(2) and
           *Grinnell* ......................................................................................................6

            1.  The Settlement Class Was Well-Represented by Lead Plaintiff and Lead
               Counsel ..............................................................................................8

            2.  The Settlement Is the Result of Good Faith, Arm's Length
               Negotiations .......................................................................................8

            3.  The Settlement Is an Excellent Result for the Settlement Class...............9

                 a.  The costs, risks and delay of trial and appeal support approval ....10

                 b.  The other Rule 23(e)(2)(C) factors support approval ...................12

                 c.  The Settlement treats all Settlement Class Members equitably.....14

        B.  The Remaining *Grinnell* Factors Support Approval..............................14

 IV.  THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY
        APPROVED ..........................................................................................................16

  V.  THE COURT SHOULD APPROVE THE PROPOSED PLAN OF NOTICE .................17

 VI.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS.............................................18

VII.  CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES
        IS APPROPRIATE ................................................................................................19

i

A. Numerosity ............................................................................................................21

B. Commonality .........................................................................................................21

C. Typicality ..............................................................................................................22

D. Adequacy ..............................................................................................................23

E. The Settlement Class Meets the Requirements of Rule 23(b) ..............................23

F. Lead Counsel Satisfies Rule 23(g) .......................................................................25

VIII.    CONCLUSION .............................................................................................................26

CERTIFICATE OF SERVICE ...............................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc., v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................19, 23, 24

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...............................................................................................12

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ..............................................................................................10

*Burns v. FalconStor Software, Inc.*,
   No. 10 CV 4572 (ERK), 2013 WL 12432583 (E.D.N.Y. Oct. 9, 2013).................................15

*Christine Asia Co. v. Yun Ma*,
   No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............7, 11, 13, 16

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)........................10

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)........................................................................................................9

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..................................................................................................6, 7

*Enriquez v. Nabriva Therapeutics plc et al*,
   1:19-cv-04183, ECF No. 78 (S.D.N.Y. May 14, 2021)...........................................................13

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005).............................................................................................16

*Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
   925 F.3d 63 (2d Cir. 2019)........................................................................................................13

*Gordon v. Vanda Pharms. Inc.*,
   No. 19 CV 1108 (FB)(LB), 2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022)...........21, 22, 24,25

*Hayes v. Harmony Gold Min. Co.*,
   No. 08 CIV. 03653 BSJ, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ...................................13

*Hayes v. Harmony Gold Min. Co.*,
   509 F. App'x 21 (2d Cir. 2013) ................................................................................................13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ..............................................................................................15

*In re Agent Orange Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................9, 16

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
    818 F.2d 145 (2d Cir. 1987).......................................................................................9

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. 2013) ...............................................................................5

*In re Am. Intern. Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012).....................................................................................23

*In re BioScrip, Inc. Sec. Litig.*,
    273 F. Supp. 3d 474 (S.D.N.Y. 2017).......................................................................13

*In re China Sunergy Sec. Litig.*,
    No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...................10

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ...............................................................................5

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).......................................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...............11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)........................................................................................23

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510 CPS SMG, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007).........15

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................15

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019).................................................................24, 25

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ...............................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
    No. 01 CIV. 3020 (SAS), 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007) ...................5

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 CIV. 2613 NRB, 2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014) ....................................6

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................................14

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
  No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)...................................10

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................................14

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................................5, 6

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................................9

*In re PaineWebber Inc. Ltd. Partnerships Litig.*,
  117 F.3d 721 (2d Cir. 1997).................................................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................................7

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) ..........................................................................................21

*In re Platinum & Palladium Commodities Litig.*,
  No. 10-CV-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ...........................................7

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................................8

*In re PPDAI Grp. Inc. Sec. Litig.*,
  No. 18-CV-6716 (TAM), 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)...................................13

*In re Take Two Interactive Sec. Litig.*,
  No. 06 CIV. 1131 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010)...............................17

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000)....................................................................................11

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)................................................................................................11

*Karvaly v. eBay, Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) ......................................................................................19, 20

*Massiah v. MetroPlus Health Plan, Inc.*,
No. 11-CV-05669 BMC, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)................................14

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 85 (2d Cir. 2019).............................................................................................17

*Micholle v. Ophthotech Corp.*,
No. 17-CV-1758 (VSB), 2022 WL 1158684 (S.D.N.Y. Mar. 14, 2022)................................24

*Mikhlin v. Oasmia Pharm. AB*,
No. 19 cv 4349 (NGG)(RER), 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021)..........................24

*Pantelyat v. Bank of America, N.A.*,
No. 16-cv-8964 (AJN), 2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) ....................................11

*Pearlman v. Cablevision Sys. Corp.*,
No. CV104992JSAKT, 2019 WL 3974358 (E.D.N.Y. Aug. 20, 2019) ..................................13

*Pearlstein v. BlackBerry Ltd.*,
No. 13 CV 7060, 2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ..............................................21

*Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
772 F.3d 111 (2d Cir. 2014)............................................................................................21

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) .......................................................................................12

*Rodriguez v. CPI Aerostructures, Inc.*,
No. 20CV0982ENVCLP, 2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021)...................... *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)............................................................................................5, 8

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) ........6

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)..............................................................................................19

**Rules**

Fed. R. Civ. P. 23...............................................................................................................2
Fed. R. Civ. P. 23(a) .........................................................................................................20
Fed. R. Civ. P. 23(a)(2)......................................................................................................21
Fed. R. Civ. P. 23(a)(3)......................................................................................................22
Fed. R. Civ. P. 23(b)(3)......................................................................................................20

Fed. R. Civ. P. 23(b)(3)(D) ...................................................................................20
Fed. R. Civ. P. 23(c)(2) .......................................................................................18
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................18
Fed. R. Civ. P. 23(c)(3) .......................................................................................17
Fed. R. Civ. P. 23(e) ............................................................................................17
Fed. R. Civ. P. 23(e)(1) ..........................................................................................6
Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................17
Fed. R. Civ. P. 23(e)(2) ..................................................................................5, 6, 7
Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................8
Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................9
Fed. R. Civ. P. 23(e)(2)(C) ................................................................................9, 12
Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) .....................................................................12
Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................14
Fed. R. Civ. P. 23(e)(3) ....................................................................................7, 12
Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................25

## Statutes

15 U.S.C. §78u-4(a)(7) .........................................................................................17

Private Securities Litigation Reform Act of 1995 .......................................2, 4, 5, 17, 18

## Other References

4 NEWBURG ON CLASS ACTIONS (5th ed. 2012) ...............................................19

Manual for Complex Litigation (Fourth) ...............................................................19

Lead Plaintiff Alex Torstorff ("Lead Plaintiff") respectfully submits this memorandum in support of his unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Parties' Stipulation and Agreement of Settlement dated April 21, 2025 (the "Stipulation")[1]; (ii) approval of the form and manner of giving notice to Settlement Class Members of the proposed Settlement; and (iii) the setting of a Settlement fairness hearing (the "Settlement Hearing") and deadlines for dissemination of Notice, for Settlement Class Member objections and exclusion, for the filing of Lead Plaintiff's Motion for Final Approval of the Settlement, and for the filing of Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses and compensatory award to Lead Plaintiff.

## I.    PRELIMINARY STATEMENT

Soon after being appointed, and after conducting a thorough investigation of the claims, defenses, and events underlying this Action, Lead Plaintiff learned two things that dramatically lowered the value of this Action and made immediate settlement imperative. First, through consultations with experts, Lead Plaintiff estimated that the maximum aggregate recovery using standard estimation procedures would only be $797,000.00 total, and likely much lower. Second, Mynaric AG ("Mynaric" or the "Company") filed with German regulators to initiate a restructuring known as a "StaRUG." According to Mynaric's website, the restructuring negotiated with Mynaric's lenders "*provides for a capital reduction to zero. Following the capital reduction to zero, all of the existing shares will cease to exist and Mynaric AG will be permanently delisted*

---

[1] The "Parties" collectively refers to Lead Plaintiff, as defined above, together with the following defendants (collectively, the "Defendants"): Mynaric AG, Mustafa Veziroglu, and Stefan Berndt-Von Bülow. All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation.

1

*in the near future from both the Xetra stock exchange in Frankfurt and over the counter trading in the United States*." *See* https://mynaric.com/investor-relations/starug/ (emphasis added).

Accordingly, understanding the need for prompt action, Lead Plaintiff and Lead Counsel negotiated a substantial and immediate recovery to the Settlement Class. The proposed Settlement will resolve all claims against Defendants in exchange for a cash payment of $300,000.00 (the "Settlement Amount") for the benefit of the Settlement Class, a highly favorable result considering the small damages ultimately recoverable and the likely alternative of no recovery at all. Lead Counsel and Lead Plaintiff believe that the Settlement Amount is in the best interest of the Settlement Class, especially given these risks as well as risks inherent in further litigation.

The Settlement provides a meaningful, immediate, and guaranteed recovery for Settlement Class Members. Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, adequate, and in the Settlement Class Members' best interest. Moreover, the proposed content and manner of providing notice satisfies requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. For these reasons, Lead Plaintiff respectfully requests that the Court grant this unopposed motion for preliminary approval.

II.      **SUMMARY OF THE LITIGATION AND SETTLEMENT**

A.  **Procedural History**

This action is pending before the Honorable Kiyo A. Matsumoto in the United States District Court for the Eastern District of New York (the "Court"), under the caption *Torstorff v. Mynaric AG, et al*, Case No. 1:24-cv-07602 (the "Action"). The initial complaint in this Action was filed on October 30, 2024 (ECF No. 1) and brought claims under Sections 10(b) and 20 of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder against Defendants. On

January 21, 2025, the Court appointed Lead Plaintiff to serve as lead plaintiff and approved his choice of counsel (*see* ECF No. 14). On January 27, 2025, the Parties submitted a stipulation and proposed scheduling order for Lead Plaintiff to file an amended class action complaint by March 25, 2025, and for Defendants to file a motion to dismiss or otherwise respond to the amended class action complaint by May 27, 2025 (ECF No. 19). Lead Plaintiff immediately retained private investigators and a damages expert to estimate aggregated damages.

On February 7, 2025, Mynaric disclosed that it had entered StaRUG proceedings to restructure. On March 21, 2025, the Parties filed a stipulation and proposed order to extend the deadline for filing the amended class action complaint to April 24, 2025, because the Parties were engaged in settlement discussions and mutually believed the brief extension would serve judicial economic and Party resources should a settlement be achieved (ECF No. 20). On March 21, 2025, the Court entered an order granting the Parties' stipulation and ordering the Parties to file a status report on April 21, 2025, indicating whether the parties have settled the Action and will seek preliminary approval, or that Lead Plaintiff will file an amended class action complaint and the related briefing schedule will commence. On April 21, 2025, Lead Plaintiff filed a letter with the Court indicating that the Parties had executed the Stipulation and that Lead Plaintiff would file a motion for preliminary approval by April 28, 2025 (ECF No. 26).

### B.  The Terms of the Settlement

The Settlement provides that Defendants will pay $300,000.00 in cash into an Escrow Account, which amount plus accrued interest comprises the Settlement Fund. Stipulation, ¶3.1. Notice to the Settlement Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund. Stipulation, ¶6.2. Lead Plaintiff

3

proposes a nationally recognized class action settlement administrator, Strategic Claims Services, to be retained here subject to the Court's approval.

The Notice provides that Lead Counsel will submit an application, in support of final approval of the Settlement, for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Amount, and litigation expenses in an amount not to exceed $20,000.00, plus interest accrued on both amounts at the same rate as earned by the Settlement Fund. The Notice further explains that such fees and expenses shall be paid from the Settlement Fund.

Having investigated the claims, defenses, and events underlying this Action, and having engaged damages and causation experts to assess recoverable damages available to the Settlement Class and having evaluated the risks of Mynaric's StaRUG restructuring, Lead Plaintiff and his counsel were well-positioned to evaluate the Settlement, as well as the potential risks and benefits of proceeding with the litigation. In particular, Lead Plaintiff and Lead Counsel considered the possibility that any recovery might be eliminated by shares being wiped out in the restructuring. They also considered that even if the litigation proceeded through trial, a favorable verdict might yield an award lower than the Settlement Amount. Based on this evaluation, Lead Plaintiff and his counsel agree that the Settlement represents a fair, adequate, and reasonable result for the Settlement Class.

Lead Plaintiff believes that if not for the restructuring and low aggregated damages, the merits of his case are strong and that he could prevail over a motion to dismiss. However, he acknowledges that Defendants contend that they did not violate the U.S. securities laws, that Lead Plaintiff cannot state a claim under the heightened pleading standards of the PSLRA, that there are substantial hurdles to class certification, that Defendants did not make any false or misleading statements or omissions, that they did not act with scienter, and that Lead Plaintiff cannot prove

4

loss causation. Although Lead Plaintiff believes his claims are well-supported, he recognizes that there are substantial hurdles to success, including the impact of the StaRUG restructuring, the heightened pleading standard for his claims under the PSLRA, a potential unfavorable decision regarding class certification, or the possibility that a jury may not return a verdict in his favor or may award damages less than the Settlement Amount. Given these risks, Lead Plaintiff and his counsel believe that the guaranteed, prompt recovery of the Settlement Amount provides an excellent result and is in the best interest of the Settlement Class.

## III. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The Second Circuit recognizes the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012). Courts should approve a class action settlement if it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).[2]

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007), *adhered to on reconsideration*, No. 01 CIV. 3020 (SAS), 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice" and "[o]nce preliminary approval is bestowed, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to

---

[2] Unless otherwise noted, all emphasis is added, and internal quotations and citations are omitted throughout.

final court approval." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). "Preliminary approval is not tantamount to a finding that [a proposed] settlement is fair and reasonable. . . . Instead, at this stage, we need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CIV. 2613 NRB, 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014). Additionally, "courts should give proper deference to the private consensual decision of the parties," and should bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276, at *18 (E.D.N.Y. Apr. 17, 2015).

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). As set forth below, this Settlement satisfies both prongs. It meets the criteria for final approval expressly enumerated in Rule 23(e)(2), as well as those articulated in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

### A. The Settlement Satisfies the Factors for Approval under Rule 23(e)(2) and *Grinnell*

The Settlement is beneficial to the Settlement Class and satisfies both Rule 23(e)(2) and the factors articulated in *Grinnell*. Under the Federal Rules, courts assessing whether to approve a settlement consider whether:

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length;

(C) The relief provided for the class is adequate, taking into account:

(i) The costs, risks, and delay of trial and appeal;
(ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) The terms of any proposed award of attorneys' fees, including timing of payment; and
(iv) Any agreement required to be identified under Rule 23(e)(3); and

(D) The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). The Grinnell factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *8-9 (S.D.N.Y. Oct. 16, 2019) (citing *Grinnell*, 495 F.2d at 463). While the Second Circuit has not prescribed any set order of consideration, at least one district court has suggested that courts first "consider[] the Rule 23(e)(2) factors, and then consider[] additional Grinnell factors not otherwise addressed by the Rule 23(e)(2) factors." *See Payment Card*, 330 F.R.D. at 29. However, the court should not "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Id.* at 30 n.24 (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—can only be determined at the final approval stage. *Id.*

### 1. The Settlement Class Was Well-Represented by Lead Plaintiff and Lead Counsel

Lead Plaintiff and Lead Counsel satisfy Rule 23(e)(2)(A)'s "adequate representation" requirement. That requirement focuses mainly on the "alignment of interests between class members." *See Wal-Mart Stores, Inc.*, 396 F.3d at 106-07. Here, Lead Plaintiff's interests (as well as Lead Counsel's) were always fully aligned with the interests of Settlement Class Members. Further, Lead Plaintiff's claims and the claims of Settlement Class Members are the same claims asserting the same legal theory over the same Class Period and, because Lead Plaintiff and Lead Counsel all "share the common goal of maximizing recovery, there is no conflict of interest[.]" *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Lead Plaintiff has vigorously litigated this case from the beginning. He has reviewed the key pleadings in this case, stayed abreast of settlement negotiations, and discussed all material aspects of the litigation with counsel. Lead Counsel substantially advanced this Action and provided benefits to the Settlement Class. For example, Lead Counsel conducted an investigation into the facts underlying the Action to prepare for an amended complaint, and also engaged experts in damages and causation to assess the total recoverable damages that would be available if the Action proceeded to trial. Given the small damages that were potentially available for recovery, this analysis prompted Lead Plaintiff and counsel for Defendants to explore an early settlement that would be in the best interests of, and confer substantial monetary benefits upon, the Settlement Class. Accordingly, this factor weighs in favor of approval.

### 2. The Settlement Is the Result of Good Faith, Arm's Length Negotiations

"A settlement is procedurally fair when it is achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." *Rodriguez v. CPI Aerostructures, Inc.*, No. 20CV0982ENVCLP, 2021 WL 9032223, at *4 (E.D.N.Y. Nov. 10,

2021); *see also* Fed. R. Civ. P. 23(e)(2)(B). In such circumstances, "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997). Indeed, there is a "presumption of fairness when a class settlement has been reached after arm's-length negotiations between experienced, capable counsel." *Rodriguez*, 2021 WL 9032223, at *4. Additionally, "the [P]arties' involvement in mediation in this case helps to ensure that the proceedings were free of collusion and undue pressure." *Id.* (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). Here, the Settlement was the result of arm's length negotiations between counsel experienced in securities class action litigation, which included multiple phone calls between experienced counsel and the confidential exchange of information related to potential damages available if the Action proceeded to trial. Accordingly, this factor also weighs in favor of preliminary approval.

### 3. The Settlement Is an Excellent Result for the Settlement Class

The Settlement provides an excellent result and immediate recovery for the Settlement Class, and is fair, reasonable, and adequate considering "the costs, risks, and delay of trial and appeal" and other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The Settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145 (2d Cir. 1987).

Here, the Settlement provides a cash payment of $300,000.00 for the benefit of the Settlement Class. This is an excellent result, especially given the risks inherent in continued

litigation.

After consulting with a damages expert, Lead Plaintiff and Lead Counsel estimate that the maximum aggregate Section 10(b) damages under a well-established multi-trader estimation are $797,000.00. Damages awarded at trial may be even less; a jury might not accept that the entirety of the decline in stock price on each disclosure date was caused by the alleged fraud. That risk is particularly acute here, as the damages estimate includes both days of a two-day drop as well as another drop that was not statistically significant at the 95% confidence level.

In any event, the $300,000.00 Settlement, a 37.6% recovery of maximum estimated damages, represents a superior percentage recovery compared to other securities class actions settlements. As one court in this Circuit has noted, "the average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses." *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011); *see also In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations"). The far higher recovery here warrants approval.

### a. The costs, risks and delay of trial and appeal support approval

The recovery is a strong result for the Settlement Class when considered on its own, and highly favorable when weighed against the risks of continued litigation. In assessing a settlement, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). This Court need only determine

10

whether the Settlement falls within a range of reasonableness that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964 (AJN), 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019).

Here, there is a very real chance of no recovery at all absent the Settlement due to Mynaric's StaRUG restructuring. Moreover, although Lead Plaintiff and Lead Counsel believe their case against Defendants is strong, they also acknowledge that Defendants may have viable arguments to refute liability. And, without the Settlement, Lead Plaintiff would still need to advance past a motion to dismiss, successfully certify a class, succeed in his opposition to Defendants' inevitable motion for summary judgment, and prevail at trial. Successfully prosecuting this Action through trial, like any securities action, would be both complex and risky. *See*, *e.g.*, *Christine Asia Co.*, 2019 WL 5257534, at *10 ("In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (recognizing that complex securities class actions are "notably difficult and notoriously uncertain").

Even if Lead Plaintiff pursued this Action through past the pleadings, through class certification, and prevailed on summary judgment all the way to trial, it is far from guaranteed that a jury would find that Defendants made material misrepresentations, acted with scienter, or that those misrepresentations were the cause of investor losses. *See, e.g.*, *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Moreover, prevailing at trial would not necessarily result in a larger recovery. The jury could award a smaller number of

11

damages, or the verdict could be appealed. *See, e.g.*, *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs against an accounting firm and entering judgment for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in a case tried in 1988 on the basis of a Supreme Court opinion handed down in 1994). In contrast, the Settlement provides an immediate and meaningful recovery for the Settlement Class.

### b.  The other Rule 23(e)(2)(C) factors support approval

Rule 23(e)(2)(C) also states that adequacy should be assessed in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[,]" "the terms of any proposed award of attorney's fees, including timing of payment[,]" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval.

First, the Settlement calls for an experienced settlement administrator to process claims and distribute the Net Settlement Fund pro-rata to the Settlement Class Members according to the defined Plan of Allocation using procedures that are well-established and have been proven effective in securities fraud litigation. Strategic Claims Services, selected by Lead Counsel after a competitive bidding process (subject to Court approval), will process claims under the guidance of Lead Counsel, and provide the Settlement Class Members with a reasonable opportunity to cure deficiencies in their claims. Thereafter, Strategic Claims Services will audit the claims received and evaluate the proposed distribution according to the Plan of Allocation, and Lead Counsel will then file a motion with the Court for an order of distribution permitting checks to be mailed to

eligible claimants.[3]

Second, as disclosed in the Notice, Lead Counsel, who have not been paid to date, will apply for a fee award not to exceed one-third of the Settlement Fund. Such a fee would be reasonable for the work performed and the results obtained and consistent with awards in similar complex class action cases. *See, e.g.*, *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *17 (E.D.N.Y. Jan. 21, 2022) (approving one-third of a $9 million settlement); *Enriquez v. Nabriva Therapeutics plc et al*, 1:19-cv-04183, ECF No. 78 (S.D.N.Y. May 14, 2021) (approving fee award that was one-third of a $3 million settlement); *Pearlman v. Cablevision Sys. Corp.*, No. CV104992JSAKT, 2019 WL 3974358, at *3 (E.D.N.Y. Aug. 20, 2019) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million."); *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017), *aff'd sub nom. Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63 (2d Cir. 2019) (approving 33 1/3% settlement and stating "courts routinely award a percentage amounting to approximately 1/3"); *Hayes v. Harmony Gold Min. Co.*, No. 08 CIV. 03653 BSJ, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (noting that attorneys' fee of one-third of the $9 million settlement amount was fair, reasonable and adequate).

Third, to protect the Settlement and the Settlement Class, the Parties have placed the terms under which Defendants may terminate the Settlement if a certain threshold of Settlement Class Members submit valid and timely requests for exclusion into a separate confidential agreement. Such an agreement "is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *See, e.g., Christine Asia Co.*, 2019 WL 5257534, at *15.

---

[3] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement Fund based on the number or value of the claims submitted.

13

#### 4. The Settlement treats all Settlement Class Members equitably

The Settlement also satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another. Under the proposed Plan of Allocation, each Authorized Claimant will receive a pro-rata share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See, e.g., In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### B. The Remaining *Grinnell* Factors Support Approval

The additional factors articulated in *Grinnell* include: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. Here, each supports approval.[4] However, "a court need not find that every factor militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in light of the particular circumstances." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008).

To begin, the stage of the proceedings favors approval. This factor assesses "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-05669 BMC, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012). Here, Lead Plaintiff and Lead Counsel conducted a thorough investigation involving the claims and defenses at issue, the events and transactions underlying the Action, and also

---

[4] One remaining *Grinnell* factor, the reaction of the Class, cannot meaningfully be assessed until Notice is disseminated and will be addressed at a later stage.

14

consulted with experts on damages and causation. This analysis prompted Lead Plaintiff and counsel for Defendants to explore an early settlement that would be in the best interests of, and confer substantial monetary benefits upon, the Settlement Class. Lead Plaintiff and Lead Counsel understand the law and the facts in this case, as well as Defendants' positions on the same.

This experience puts Lead Plaintiff and Lead Counsel in position to evaluate the merits of the Settlement and appreciate the strengths and weaknesses they will face if the litigation were to proceed. *See Rodriguez*, 2021 WL 9032223, at \*5 (finding this factor satisfied where plaintiff settled his action while the motion to dismiss decision was pending because "[w]hile formal discovery has not occurred in this case . . . Plaintiffs filed an exhaustive Amended Complaint in this case and defendants responded with a motion to dismiss, apprising plaintiffs of the defendants' position. Moreover, Lead Plaintiff and his counsel engaged in extensive negotiations with the defendants with the aid of a mediator"); *Burns*, 2013 WL 12432583, at \*8 (finding that information gained through the mediation and settlement process found to be sufficient in a case without any discovery); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS SMG, 2007 WL 2743675, at \*10 (E.D.N.Y. Sept. 18, 2007) (explaining how the Parties can be knowledgeable about strengths and weaknesses in a case even if "little formal discovery has been completed").[5]

Second, while the Action has not reached class certification for litigation purposes, even if it had, the Court could revisit certification at any time, presenting a continuous risk that this case (or particular claims) might not be maintained on a class-wide basis through trial. *Rodriguez*, 2021

---

[5] *See also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (finding that even where "no merits discovery occurred in this case to date," lead counsel was "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

WL 9032223, at \*6 (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)) ("the risk that the case might not be certified is not illusory").

Finally, the Settlement Amount is within the range typically found reasonable relative to the maximum prospective recovery. Reasonableness must be judged "in light of the strengths and weaknesses of plaintiffs' case" not "the best of all possible worlds." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. at 762. That is especially true where, as here, Defendants have colorable arguments to defend against liability and the potential maximum damages that are recoverable are small. Here, the Settlement's recovery is reasonable (and certain) even before considering potential impediments to continued litigation of this Action and is an excellent recovery after considering such risks.

## IV. THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

The proposed Plan of Allocation, which is detailed in the Notice to be provided to the Settlement Class Members, will govern how the Settlement proceeds will be distributed among Settlement Class Members who timely file a valid Proof of Claim. A plan of allocation, "particularly if recommended by experienced and competent class counsel," should be approved so long as it is "fair and adequate" and "ha[s] a reasonable, rational basis." *Christine Asia Co.*, 2019 WL 5257534, at \*15. The proposed Plan of Allocation was prepared by Lead Counsel after consulting with experts, and rationally reflects the allegations and causes of action asserted in this case. It will result in a fair and equitable distribution of the proceeds among Settlement Class Members who submit valid claims and does not provide preferential treatment for Lead Plaintiff. Each will receive no more, or less, than his or her pro-rata share of the Net Settlement Fund based on recognized losses assessed by the formula described in the Notice.

16

## V.  THE COURT SHOULD APPROVE THE PROPOSED PLAN OF NOTICE

Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)) and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)(B)). Pursuant to the PSLRA, the notice must also include an explanation of the plaintiff's recovery. *In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684, at *12–13 (S.D.N.Y. June 29, 2010) (quoting 15 U.S.C. §78u-4(a)(7)). The notice must also "fairly apprise[] the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019).

Lead Plaintiff's proposed plan of notice satisfies these standards. As specified by Rule 23(c)(3) and 15 U.S.C. §78u4(a)(7), the Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the certified Settlement Class and who is excluded; (3) the reasons for settling; (4) the amount of the Settlement Fund; (5) the Settlement Class's claims and issues raised in this Action; (6) the Parties' disagreement over damages and liability; (7) the maximum amount of attorneys' fees and expenses that Lead Counsel may seek; (8) the maximum amount that may be requested as a reimbursement award to Lead Plaintiff; and (9) the plan for allocating the Settlement proceeds to the Settlement Class.[6] Ex. A-1. The Notice also describes the process for seeking exclusion from the Settlement Class, or for objecting to the Settlement, Plan of Allocation, or requests for awards of fees and expenses. *Id.*

To provide notice of the Settlement, the proposed Preliminary Approval Order directs that

---

[6] The Notice also discloses a fee sharing agreement between Lead Counsel and Bronstein, Gewirtz & Grossman LLC. *See* Local Civil Rule 23.1.

17

within 26 calendar days after entry of the Preliminary Approval Order, the Claims Administrator shall cause the Notice to be provided on the Settlement website, and cause the Postcard Notice to be mailed to all potential Settlement Class Members who can be identified with reasonable effort. Lead Plaintiff will also cause the Summary Notice to be published on a national business newswire within 26 calendar days after the entry of the Preliminary Approval Order. Ex. A at ¶17. All key Settlement documents will also be posted on the website and made available by email or toll-free telephone number. Ex. A at ¶16. Accordingly, the proposed plan of notice meets all the requirements of due process, the PSLRA, and the Federal Rules of Civil Procedure.

## VI.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff respectfully proposes the schedule set forth below for Settlement-related events. The specific timing of events is determined by the date on which the Settlement Hearing is scheduled. To allow sufficient time for the Notice to be disseminated to the potential Settlement Class Members, Lead Plaintiff respectfully requests that the Court schedule the Settlement Hearing at the Court's convenience but for a date not earlier than 105 calendar days after entry of the Preliminary Approval Order.

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for notice to Settlement Class Members by mailing the Postcard Notice (Preliminary Approval Order, ¶11) | 26 calendar days after entry of Preliminary Approval Order |
| Deadline for the publication of the Summary Notice in nationally distributed, business-focused newswire (Preliminary Approval Order, ¶17) | 26 calendar days after entry of Preliminary Approval Order (and at least 7 calendar days before the Settlement Hearing) |

| | |
|---|---|
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and Fee and Expense Application (Preliminary Approval Order, ¶28) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order, ¶21) | 28 calendar days prior to Settlement Hearing |
| Postmark deadline for submitting a Proof of Claim (Preliminary Approval Order, ¶19(a)) | 44 calendar days prior to Settlement Hearing |
| Deadline for filing responses to any objections or in further support of the Settlement, the Plan of Allocation, and the Fee and Expense Application (Preliminary Approval Order, ¶29) | 7 days prior to the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order, ¶6) | To be determined by the Court, approximately 105 days after entry of the Preliminary Approval Order |

## VII.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In preliminarily approving the proposed Settlement, this Court must consider whether to conditionally certify the proposed Class for settlement purposes. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation (Fourth) § 21.632. The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). "The type of certification approval that courts provide with a preliminary settlement approval is accorded under a more relaxed standard" than in the typical certification process. 4 NEWBURG ON CLASS ACTIONS § 13:18 (5th ed. 2012). The Court need not conduct a definitive analysis at this stage and instead should reserve the ultimate analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86

19

(E.D.N.Y. 2007) ("In the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval."). In certifying the Settlement Class, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id*. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Under the Federal Rules, certification of a settlement class is proper where the proposed class and proposed class representative meet the four requirements of Rule 23(a): (1) "numerosity" – the class is so numerous that joinder of all members is impracticable, (2) "commonality" – there are questions of law or fact common to the class, (3) "typicality" – the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) "adequacy" – the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, certification of a class action for damages requires a showing, under Rule 23(b)(3), that questions of law or fact common to the members of the class predominate over individual issues of law or fact ("predominance") and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3). Here, for settlement purposes only, Defendants have agreed not to contest that the Settlement Class satisfies all requirements of Federal Rule of Civil Procedure 23(a) and (b)(3). Stipulation ¶2.2. For settlement purposes, Lead Plaintiff requests that the Court certify the Settlement Class defined in the Stipulation: "all persons or entities other than Defendants that purchased or otherwise acquired Mynaric ADS between June 20, 2024 and October 7, 2024, both dates inclusive. For avoidance of doubt, transactions in Mynaric ordinary shares are not part of this Settlement and cannot qualify a person to be a Settlement Class Member. Excluded from the Settlement Class are all current and former officers, directors, and management and supervisory

20

board members of Mynaric, Defendants herein, and the immediate family members of such persons. Also excluded are all putative members of the Settlement Class who file a valid and timely request for exclusion." *Id.* at ¶1.33. In this case, the proposed Class satisfies Rule 23(a) and 23(b)(3).

### A. Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. In the Second Circuit, "[n]umerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *Pearlstein v. BlackBerry Ltd.*, No. 13 CV 7060, 2021 WL 253453, at *7 (S.D.N.Y. Jan. 26, 2021); *see also Rodriguez*, 2021 WL 9032223, at *8. This is the case here: investors traded an average daily volume of more than 182,000 Mynaric ADS on the NASDAQ during the relevant period. Thus, while Lead Plaintiff "does not know the 'exact' number of class members, he estimates that there are "thousands" of investors residing in geographically disparate areas that would be included in the class, thus rendering joinder impracticable." *Rodriguez*, 2021 WL 9032223, at *8. Consequently, numerosity is satisfied. *Id*.

### B. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "In securities fraud cases, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also Gordon v. Vanda Pharms.*

21

*Inc.*, No. 19 CV 1108 (FB)(LB), 2022 WL 4296092, at *7 (E.D.N.Y. Sept. 15, 2022). Here, common issues include (1) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Mynaric; (2) whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (3) whether the Defendants caused Mynaric to issue false and misleading press releases during the Class Period; (4) whether Defendants acted knowingly or recklessly in issuing false and misleading press releases; (5) whether the prices of Mynaric's ADS during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and (6) whether Settlement Class Members have sustained damages and, if so, what is the proper measure of damages. *See, e.g.*, Complaint ¶45. Other courts have found such issues establish commonality. *See, e.g.*, *Rodriguez*, 2021 WL 9032223, at *8.

### C. Typicality

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The Second Circuit has established a two-pronged test. First, there must be a showing that class counsel is qualified, experienced and able to conduct the litigation. Second, the named plaintiffs' interests must not be antagonistic to the interest of other members of the class." *Rodriguez*, 2021 WL 9032223, at *9. "This is satisfied, where, as here, the claims of the representative plaintiffs arise from the same course of conduct that gives rise to claims of the other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *Gordon*, 2022 WL 4296092, at *7. Here, Lead Plaintiff's claims and the claims of other Settlement Class Members

22

arise from the same course of conduct and are based on the same legal theory. Thus, typicality is satisfied.

### D.      Adequacy

Adequacy is also satisfied in this case. "Adequacy entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Lead Plaintiff satisfies both prongs. Lead Plaintiff's interests are the same as absent Settlement Class Members: to maximize any potential recovery and achieve that recovery as expeditiously as possible. There are no antagonistic interests in this case. Further, Lead Plaintiff here retained a highly experienced securities litigation firm and regularly communicated with the attorneys of record, which put the Settlement Class in a strong position throughout this Action to achieve a favorable outcome. Lead Plaintiff and Lead Counsel's efforts are reflected in the favorable Settlement presented herein.

### E.      The Settlement Class Meets the Requirements of Rule 23(b)

Rule 23(b)(3) requires proof that common issues predominate, and that a class action is the superior method of adjudication. As the Supreme Court noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. "Moreover, common issues, such as liability, may be certified even where other issues, such as damages, do not lend themselves to classwide proof." *Rodriguez*, 2021 WL 9032223, at *11. Further, "the predominance inquiry will sometimes be easier to satisfy in the settlement context" because a settlement class inherently addresses some of the practical concerns motivating the predominance test, concerns that are primarily relevant when certifying a litigation class. *In re Am. Intern. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 232 (2d Cir. 2012).

Here, "[r]esolution of plaintiff's allegations—including questions of liability, causation, and damages—are susceptible to generalized proof and, further, such generalized inquiries predominate over any issues specific to individual class members." *Gordon*, 2022 WL 4296092, at *8; *see also Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2022 WL 1158684, at *3 (S.D.N.Y. Mar. 14, 2022) ("Predominance is met here because the members of the Settlement Class were subject to the same alleged misrepresentations and omissions of Defendants and the claim is susceptible to common evidence and proof"); *Mikhlin v. Oasmia Pharm. AB*, No. 19 cv 4349 (NGG)(RER), 2021 WL 1259559, at *11 (E.D.N.Y. Jan. 6, 2021) ("The putative class members purchased the same securities, the value of which was allegedly damaged by the same series of fraudulent acts and omissions. Accordingly, the court will likely find that common factual and legal questions predominate over individual issues.").

Similarly, superiority is evident. Courts consider four factors in assessing superiority: (1) the interests of members of the class in individually controlling the prosecution of separate actions; (2) whether other litigation has already commenced; (3) the desirability or undesirability of concentrating claims in one forum; and (4) the difficulties likely to be encountered in the management of a class action. *Amchem*, 521 U.S. at 616. Here, each factor favors certification. Because many investors suffered losses too small to justify individual litigation, class adjudication is the only realistic basis for recourse. Moreover, because "[t]here are likely thousands of class members nationwide … consolidating their claims is in the interests of efficiency and judicial economy." *Gordon*, 2022 WL 4296092, at *9; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019) ("[C]oncentrating the case in one forum will help improve fairness and efficiency in adjudication of the claims of plaintiffs, who are widely dispersed."). "Additionally, a class action is superior where, as here, the economic loss incurred by many class

members is not of a magnitude that would make individual 'litigation economical.'" *Gordon*, 2022 WL 4296092, at *9 (citing *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 702). There are no other parallel actions, and it is desirable to concentrate claims to avoid unnecessary duplication and waste of resources. Finally, Lead Plaintiff foresees no difficulty in effecting settlement on a class basis, as is the typical course in securities fraud class actions.

#### F.    Lead Counsel Satisfies Rule 23(g)

Rule 23(g) requires the appointment of a class counsel that can fairly and adequately represent the interests of the Settlement Class, and specifically instructs the Court to consider:

> (i) The work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Here, Lead Counsel satisfies these considerations. Lead Counsel spent significant effort investigating the potential claims in this action before and after being appointed Lead Counsel. Lead Counsel is also highly experienced in the area of securities litigation and securities fraud class actions on behalf of investors, as outlined in the firm's resume. *See* ECF No. 9-8. Moreover, Lead Counsel has extensive knowledge of the applicable law governing this Action, as demonstrated both by its experience, *id*., and its efforts in this Action, where Lead Counsel approached Defendants about a potential early resolution given the potential damages involved and the judicial and Party resources associated with pursuing the Action. Finally, Lead Counsel has expended resources in representing the Settlement Class, including but not limited to the resources necessary to estimate the maximum potential damages available for recovery. Thus,

Lead Counsel's extensive efforts and in-depth knowledge of the law governing this Action weigh in favor of appointment under Rule 23(g).

## VIII. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed Settlement, (2) approve the Plan of Allocation, (3) approve the proposed form and manner of notice, (4) certify the proposed Class for purposes of the Settlement, and (5) schedule a Settlement Hearing.

Dated:  April 28, 2025

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Diego Martinez-Krippner*
Joshua B. Silverman (admitted *pro hac vice*)
Diego Martinez-Krippner (admitted *pro hac vice*)
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: jbsilverman@pomlaw.com
      dmartinezk@pomlaw.com

*-and-*

Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
      ahood@pomlaw.com
      tprzybylowski@pomlaw.com

*Lead Counsel for Lead Plaintiff Alex Torstorff*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Alex Torstorff*

27

## CERTIFICATE OF SERVICE

On April 28, 2025, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Diego Martinez-Krippner*
Diego Martinez-Krippner

28