## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX TORSTORFF, Individually and on Behalf of All Others Similarly Situation,<br><br>     Plaintiff,<br><br>  v.<br><br>MYNARIC AG, MUSTAFA VEZIROGLU, and STEFAN BERNDT-VON BÜLOW,<br><br>     Defendants. | Case No. 1:24-cv-07602-KAM-CLP |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") is made and entered into by and between the Court-appointed Lead Plaintiff Alex Torstorff ("Lead Plaintiff"), on behalf of himself and all other members of the Settlement Class (defined below), and Defendants Mynaric AG ("Mynaric"), Mustafa Veziroglu ("Veziroglu"), and Stefan Berndt-von Bülow ("Berndt-von Bülow" and, with Veziroglu, the "Individual Defendants"), and embodies the terms and conditions of the settlement of the above-captioned action (the "Action"). The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle with prejudice the Released Claims (defined below), subject to the approval of the United States District Court for the Eastern District of New York (the "Court"), and the terms and conditions set forth in this Stipulation.

**WHEREAS:**

**I.  THE ACTION**

On October 30, 2024, Lead Plaintiff filed this putative securities class action in the United States District Court for the Eastern District of New York, captioned *Alex Torstorff v. Mynaric AG, et al.*, Case No. 1:24-cv-07602 (E.D.N.Y.), on behalf of all persons and entities other than Defendants that purchased or otherwise acquired Mynaric ADS (defined below) between June 20,

2024 and October 7, 2024, both dates inclusive. ECF No. 1 at 1-2.[1] The Class Action Complaint ("Complaint") alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Defendants. On January 21, 2025, the Court appointed Mr. Torstorff Lead Plaintiff and approved his selection of Pomerantz LLP as Lead Counsel.

On January 27, 2025, the Parties submitted a joint proposed scheduling order for filing an amended complaint and briefing a motion to dismiss the Action. ECF No. 19.

## II.    THE SETTLEMENT

While Lead Plaintiff was preparing his amended complaint, Lead Counsel and Defendants' Counsel began to discuss the potential for settlement. The negotiations involved several phone calls and the confidential exchange of information related to potential damages. Both sides concluded that this action involved a very low amount of aggregate damages and that there was benefit therefore to both the Class and to Defendants to exploring an early settlement. Ultimately, after the exchange of various demands and offers, both sides agreed in principle to the Settlement documented herein.

## III.   DEFENDANTS' DENIAL OF WRONGDOING AND LIABILITY

Defendants deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws. Defendants believe that their actions have been in full compliance at all times with the U.S. securities laws and all other applicable law. Defendants specifically deny all allegations of wrongdoing or liability against them arising out of the conduct, statements, acts, or omissions alleged or that could have been alleged in the Action, including each and every one of the claims alleged by Lead Plaintiff in the Action on behalf of the Settlement Class, as well as all claims in the Complaint, and deny that Lead Plaintiff or Settlement Class Members have suffered damages or were otherwise harmed by Defendants. By entering into this Settlement, Defendants make no admission of liability or admit

---

[1] "ECF" herein refers to the electronic court filing docket entries filed in the underlying Action, Case No. 1:24-cv-07602 (E.D.N.Y.).

any form of wrongdoing whatsoever, which they expressly deny. Nonetheless, Defendants have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation solely to avoid the further expense, inconvenience, and burden of this Action, the distraction and diversion of personnel and resources, and to obtain the conclusive and complete dismissal or release of this Action and the Released Claims.

This Stipulation and all other settlement documents, any proceedings relating to any settlement, or any of the terms of any settlement, whether or not consummated or approved by the Court, shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of Defendants, or any of them, with respect to any fact or matter alleged in the Action, or any claim of fault or liability or wrongdoing or damage whatsoever, or any infirmity of any defense that has or could have been asserted. Further, this Stipulation, and all related documents, shall not be construed as or deemed to be evidence of any deception, negligence, fault, liability, wrongdoing, or damage whatsoever, of any kind or by any Defendant, or in any way referred to for any other reason as against any Defendant in any civil, criminal, or administrative action or proceeding. Each Defendant reserves all defenses to any claims that may be filed by anyone, including any individual or entity that has sought, or seeks, exclusion from the Settlement Class.

**IV.    CLAIMS OF LEAD PLAINTIFF AND BENEFITS OF SETTLEMENT**

In connection with this Action, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events that are the subject of the Action. This process included reviewing and analyzing: (i) Mynaric's public filings with the SEC; (ii) publicly available information, including press releases, news articles, interviews, conference calls, and other public statements issued by or concerning the Company and/or Defendants; (iii) reports of securities and financial analysts about the Company, and other commentary and analysis concerning Mynaric and the industry in which it operates; and (iv) the applicable law governing the claims and potential defenses. Lead Plaintiff also consulted with

experts on damages and causation, and began to prepare an amended complaint on the basis of his investigation.

Lead Plaintiff believes that the claims asserted in the Action have merit and that the information developed to date supports the claims asserted. However, after considering the small damages ultimately recoverable, the time and expense of litigation, potential defenses that might be raised, and what they perceived to be a significant risk of non-recovery should Lead Plaintiff prevail in the litigation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial monetary benefits upon, and is in the best interests of, the Settlement Class.

## V.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

**NOW THEREFORE**, without any concession by Lead Plaintiff that the Action lacks merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit of their defenses, it is hereby **STIPULATED AND AGREED**, by and among Lead Plaintiff, on behalf of himself and the Settlement Class, and Defendants, through their respective attorneys, subject to approval by the Court pursuant to Federal Rule of Civil Procedure 23(e), that, in consideration of the benefits flowing to the Parties hereto, the Action shall be dismissed with prejudice, and all Released Claims, as against all Released Parties, shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, and without costs except as otherwise specified herein, upon and subject to the following terms and conditions:

## 1. DEFINITIONS

As used in this Stipulation, the following terms shall have the meanings set forth below. In the event of any inconsistency between any definition set forth below and any definition in any other document related to the Settlement, the definition set forth below shall control.

1.1    "Action" means the consolidated civil action captioned *Torstorff v. Mynaric AG*, Case No. 1:24-cv-07602, pending in the United States District Court for the Eastern District of New York before the Honorable Kiyo A. Matsumoto.

1.2    "ADS" means American Depositary Share.

4

1.3    "Authorized Claimant" means a Settlement Class Member who submits a valid Proof of Claim and Release form to the Claims Administrator that is accepted for payment.

1.4    "Claims Administrator" means Strategic Claims Services, the firm to be retained by Lead Counsel, subject to Court approval, to provide all notices approved by the Court to Settlement Class Members, to process proofs of claim, and to administer the Settlement.

1.5    "Defendants" means Mynaric AG, Mustafa Veziroglu, and Stefan Berndt-von Bülow.

1.6    "Defendants' Counsel" means the law firm of Sullivan & Cromwell LLP.

1.7    "Effective Date" means the date upon which the Settlement shall have become effective, as set forth in ¶11.1 below.

1.8    "Escrow Account" means the separate, interest-bearing escrow account designated and controlled by the Escrow Agent wherein the Settlement Amount shall be deposited and held for the benefit of the Settlement Class pursuant to this Stipulation and subject to the jurisdiction of the Court.

1.9    "Escrow Agent" means Huntington National Bank.

1.10    "Fee and Expense Application" means Lead Counsel's application for an award of attorneys' fees and payment of litigation expenses incurred in prosecuting the case, including any expenses of Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4) of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

1.11    "Final," with respect to a court order, means the later of: (i) if there is an appeal from a court order, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration, or a petition for a *writ of certiorari* and, if *certiorari* is granted, the date of final affirmance of the order following review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the order or the final dismissal of any proceeding on *certiorari* to review the order; or (iii) the expiration of the time for the filing or noticing of any appeal or petition for *certiorari* from the order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing

5

court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought), without any such filing or noticing being made. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation of the Net Settlement Fund, or to the Court's award of attorneys' fees or expenses, shall not in any way delay or affect the time set forth above for the Judgment to become Final or otherwise preclude the Judgment from becoming Final.

1.12    "Individual Defendants" means Mustafa Veziroglu and Stefan Berndt-von Bülow.

1.13    "Judgment" means the proposed judgment to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit B.

1.14    "Lead Counsel" means Pomerantz LLP for Lead Plaintiff.

1.15    "Lead Plaintiff" means Alex Torstorff.

1.16    "Net Settlement Fund" means the Settlement Fund less: (i) Court-awarded attorneys' fees and expenses (which may include an application for an award to Lead Plaintiff, which payment includes but is not limited to, reimbursement of Lead Plaintiff's reasonable costs and expenses related to his representation of the Settlement Class); (ii) Notice and Administration Expenses; (iii) Taxes; and (iv) any other fees or expenses approved by the Court.

1.17    "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing and Motion for Attorneys' Fees and Expenses which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit 1 to Exhibit A hereto, and shall be posted on the Claims Administrator's website related to this Settlement.

1.18    "Notice and Administration Expenses" means all costs, fees, and expenses incurred in connection with providing notice to the Settlement Class and the administration of the Settlement, including but not limited to: (i) providing notice of the proposed Settlement by email where practicable, mail (where email is unavailable), publication, or other means to Settlement Class Members; (ii) receiving and reviewing claims; (iii) applying the Plan of Allocation; (iv) communicating with Persons regarding the proposed Settlement and claims administration

6

process; (v) distributing the proceeds of the Settlement; and (vi) fees related to the Escrow Account and investment of the Settlement Fund.

1.19    "Parties" means both Defendants and Lead Plaintiff.

1.20    "Person(s)" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity.

1.21    "Plan of Allocation" means the proposed Plan of Allocation of Net Settlement Fund, which, subject to the approval of the Court, shall be substantially in the form described in the Notice.

1.22    "Postcard Notice" means the postcard form notice, which, subject to Court approval, shall be substantially in the form attached hereto as Exhibit 3 to Exhibit A hereto, and which shall be emailed where practicable and otherwise mailed first class, postage prepaid, to Settlement Class Members and third-party nominees and custodians (the "Postcard Notice") that can be identified through reasonable investigation.

1.23    "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement which, subject to Court approval, shall be substantially in the form attached hereto as Exhibit A.

1.24    "Proof of Claim" or "Claim Form" means the Proof of Claim and Release form for submitting a claim which, subject to Court approval, shall be substantially in the form attached as Exhibit 2 to Exhibit A hereto, and shall be posted on the Claims Administrator's website related to this Settlement.

1.25    "Released Claims" means both Releasing Plaintiffs' Parties' Claims and Released Defendants' Claims.

"Released Defendants' Claims" means any and all

(a)    Claims and causes of action of every nature and description, whether known claims or Unknown Claims, including, but not limited to, debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues, claims, controversies and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether individual or class in nature, whether arising under federal, state, local, or foreign statutory, common, or administrative law, or any other law, rule, or regulation, whether foreign or domestic, that

(b)    Arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against Defendants.

The Released Defendants' Claims shall not include (i) any claims relating to the enforcement of the Settlement; (ii) any claims against any Person who or which submits a request for exclusion from the Settlement that is accepted by the Court as valid; or (iii) any claims that any Defendant may have under or relating to any policy of liability or other insurance policy. For the avoidance of doubt, this Stipulation shall not release any insurer, co-insurer, excess insurer, or re-insurer from any obligation owed to any Defendant in the Action for indemnity or coverage under or relating to any policy of liability or other insurance policy. As set forth below, this release includes a standard provision regarding the waiver of the benefits conferred by California Civil Code § 1542 or any other similar provision of law.

1.26    "Released Defendants' Parties" means

(a)    Each Defendant;

(b)    The family members of the Individual Defendants;

8

     (c)     Direct or indirect parent entities, direct and indirect subsidiaries, related entities, and all affiliates of Mynaric AG;

     (d)     Any trust of which any Individual Defendant is the settlor or which is for the benefit of any Individual Defendant and/or his or her family members;

     (e)     Any firm, trust, corporation or other entity in which a Defendant has a controlling interest; and

     (f)     For any of the persons or entities listed in parts (a) through (e), as applicable, their respective past, present, and future parents, direct or indirect subsidiaries, affiliates, divisions, general partners, limited partners, principals, members, shareholders, joint venturers, officers, directors, supervisory or management board members, managers, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, advisors, underwriters, insurers, reinsurers, indemnitors, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, estates, and any controlling person thereof; all in their capacities as such (each of the foregoing, a "Released Defendants' Party").

1.27     "Released Parties" means the Released Defendants' Parties and the Released Plaintiffs' Parties.

1.28     "Released Plaintiffs' Parties" means

     (a)     Lead Plaintiff, all Settlement Class Members, any other plaintiffs in the Action and their counsel, Lead Plaintiff's Counsel, liaison counsel or referring counsel, and

     (b)     Each of their respective immediate family members, and their respective partners, general partners, limited partners, principals, shareholders, joint venturers, members, officers, directors, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants,

9

financial advisors, insurers, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof, all in their capacities as such (each of the foregoing, a "Released Plaintiffs' Party").

Released Plaintiffs' Parties do not include any Person who timely and validly seeks exclusion from the Settlement Class.

1.29    "Releasing Plaintiffs' Parties" means Lead Plaintiff and other members of the Settlement Class, together with their successors, assigns, executors, heirs, administrators, representatives, attorneys, and agents, in their capacities as such (each of the foregoing, a "Releasing Plaintiffs' Party).

1.30    "Releasing Plaintiffs' Parties' Claims" means any and all:

(a)    Claims and causes of action of every nature and description, whether known claims or Unknown Claims, including, but not limited to, debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues, claims, controversies, and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether individual or class in nature, whether arising under federal, state, local, or foreign statutory, common, or administrative law, or any other law, rule, or regulation, whether foreign or domestic, that

(b)    Lead Plaintiff or any Settlement Class Member: (i) asserted in the Action against Defendants; or (ii) could have asserted in the Action or in any other action or in any other forum that

     (c)     Arise out of, are based on, or relate in any way to, directly or indirectly, any of the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations or omissions involved, set forth, alleged, or referred to, in the Action; and that

     (d)     Arise out of, are based upon, or relate in any way, directly or indirectly, to the purchase, acquisition, transfer, holding, ownership, disposition, or sale of Mynaric ADS by any Settlement Class Member, and/or any disclosures, public filings, registration statements, or other statements by Mynaric or any Defendant during the Class Period, including, without limitation, any claims related to statements, disclosures, nondisclosures, or omissions allegedly made or not made by Defendants or any other of the Released Defendant Parties, or that otherwise would have been bared by res judicata had the action been litigated to a final judgment.

For the avoidance of doubt, this Stipulation shall not release any insurer, co-insurer, excess insurer, or re-insurer from any obligation owed to any Defendant in the Action for indemnity or coverage under or relating to any policy of liability or other insurance policy. Releasing Plaintiffs' Parties' Claims shall not include (i) any claims relating to the enforcement of the Settlement; and (ii) any claims of any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court. As set forth below, this release includes a standard provision regarding the waiver of the benefits conferred by California Civil Code § 1542 or any other similar provision of law.

     1.31    "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Stipulation.

     1.32    "Settlement Amount" means $300,000.00 (U.S. dollars), payable in cash.

     1.33    "Settlement Class" or "Settlement Class Member" means all persons or entities other than Defendants that purchased or otherwise acquired Mynaric ADS between June 20, 2024 and October 7, 2024, both dates inclusive. For avoidance of doubt, transactions in Mynaric

ordinary shares are not part of this Settlement and cannot qualify a person to be a Settlement Class Member. Excluded from the Settlement Class are all current and former officers, directors, and management and supervisory board members of Mynaric, Defendants herein, and the immediate family members of such persons. Also excluded are all putative members of the Settlement Class who file a valid and timely request for exclusion.

1.34    "Settlement Class Counsel" means Pomerantz LLP.

1.35    "Settlement Fund" means the Settlement Amount and any interest earned thereon.

1.36    "Settlement Hearing" means the hearing to be held by the Court to determine whether: (i) the Settlement is fair, reasonable, and adequate, and should be finally approved; (ii) the Plan of Allocation is fair and reasonable and should be approved; and (iii) Lead Counsel's application for attorneys' fees and expenses and Lead Plaintiff's awards are reasonable and should be approved.

1.37    "Stipulation" means this Stipulation and Agreement of Settlement.

1.38    "Summary Notice" means the Summary Notice of Pendency of Class Action, Proposed Class Action Settlement, Final Approval Hearing, and Motion for Attorneys' Fees and Expenses which, subject to Court approval, shall be substantially in the form attached as Exhibit 4 to Exhibit A hereto, and which shall be published in a widely-circulated national wire service.

1.39    "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties, and the reasonable expenses of tax attorneys and accountants).

1.40    "Unknown Claims" means any and all Released Claims that the Releasing Plaintiffs' Parties (with respect to Releasing Plaintiffs' Parties' Claims) or Defendants (with respect to Released Defendants' Claims) do not know or suspect to exist at the time of the release. This includes claims which, if known, might have affected the Settlement and Releasing Plaintiffs' Parties' Claims and Released Defendants' Claims, including the decision to object or not to object to this Settlement. The Parties expressly acknowledge and shall be deemed to have

12

expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any other jurisdiction, or principle of common law or foreign law that is, or has an effect that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Lead Plaintiff, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims as applicable, without regard to the subsequent discovery or existence, whether or not hidden or concealed, of such different or additional facts, legal theories, or authorities. Lead Plaintiff and Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

## 2. SCOPE AND EFFECT OF SETTLEMENT

2.1    The obligations incurred pursuant to this Stipulation are: (i) subject to approval by the Court and the Judgment reflecting such approval becoming Final; and (ii) in full and final disposition of the Action with respect to the Released Parties and any and all Released Claims including Released Defendants' Claims and Releasing Plaintiffs' Parties' Claims.

2.2    Solely for the purposes of this Settlement and without waiving any rights, Defendants agree not to contest that the Settlement Class satisfies all requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3), such that this Action is properly maintained as a class action.

13

2.3    By operation of the Judgment, as of the Effective Date, each and every one of the Releasing Plaintiffs' Parties, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Releasing Plaintiffs' Parties' Claims against each and every one of the Released Defendants' Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Releasing Plaintiffs' Parties' Claims against any and all of the Released Defendants' Parties, whether or not any individual Settlement Class Member executes and delivers the Proof of Claim, and whether or not any individual Settlement Class Member shares or seeks to share in the Settlement Fund. In addition, by operation of the Judgment, as of the Effective Date, in exchange for the mutual releases and other consideration set forth herein, including full payment of the Settlement Amount by or on behalf of Defendants, the Action shall be dismissed with prejudice as set forth herein.

2.4    By operation of the Judgment, as of the Effective Date, Defendants, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Defendants' Claims against each and every one of the Released Plaintiffs' Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Defendants' Claims against any and all of the Released Plaintiffs' Parties.

## 3. THE SETTLEMENT CONSIDERATION

3.1    In full settlement of the claims asserted in the Action against Defendants and in consideration of the releases specified in ¶¶2.3–2.4, *supra*, all of which the Parties agree are good and valuable consideration, Defendants shall pay, or cause to be paid by Defendants' insurers, the Settlement Amount into the Escrow Account within twenty (20) business days after the later of: (1) the Court's entry of an order preliminarily approving the Settlement; and (2) Lead Counsel providing to Defendants' Counsel a Form W-9 and wire transfer instructions.

3.2     The Escrow Agent shall deposit the Settlement Amount plus any accrued interest in a segregated Escrow Account maintained by the Escrow Agent.

3.3     Neither Defendants nor their counsel shall have responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel, the Claims Administrator, the Escrow Agent, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

3.4     Other than the obligation of Defendants to cause the payment of the Settlement Amount pursuant to ¶3.1, Defendants shall have no obligation to make any other payments into the Escrow Account or to any Settlement Class Member or Lead Counsel in settlement of this Action or pursuant to this Stipulation, including, without limitation, any responsibility or liability related to any fees, taxes, investment decisions, maintenance, supervision, or distribution of any portion of the Settlement Amount.

## 4.  USE AND TAX TREATMENT OF SETTLEMENT FUND

4.1     The Settlement Fund shall be used: (i) to pay any Taxes; (ii) to pay Notice and Administration Expenses; (iii) to pay any attorneys' fees and expenses awarded by the Court (which may include an application for an award to Lead Plaintiff); (iv) to pay any other fees and expenses awarded by the Court; and (v) to pay the claims of Authorized Claimants.

4.2     The Net Settlement Fund shall be distributed to Authorized Claimants as provided in ¶¶7.1–8.8 hereof, *infra*. The Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held in the Escrow Account, and all interest thereon, shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such

time as the funds shall have been disbursed or returned, pursuant to the terms of this Stipulation, or further order of the Court. The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction account(s) that are fully insured by the Federal Deposit Insurance Corporation ("FDIC") in amounts that are up to the limit of FDIC insurance. Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund.

4.3    After the Settlement Amount has been paid into the Escrow Account, the Parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. All provisions of this Stipulation shall be interpreted in a manner that is consistent with the Settlement Amount being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, the Escrow Agent shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to timely occur. Consistent with the foregoing:

(a)    For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be the Escrow Agent or its successors, who shall timely and properly file, or cause to be filed, all federal, state, or local tax returns and information returns (together, "Tax Returns") necessary or advisable with respect to the earnings on the funds deposited in the Escrow

16

Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)). Such Tax Returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the funds deposited in the Escrow Account shall be paid out of such funds as provided in subparagraph (c) of this paragraph.

(b)     All Taxes shall be paid out of the Settlement Fund. In all events, Defendants and Defendants' Counsel shall have no liability or responsibility whatsoever for the Taxes or the filing of any Tax Return or other document with the Internal Revenue Service or any other state or local taxing authority. Defendants shall have no liability or responsibility for the Taxes of the Escrow Account with respect to the Settlement Amount nor the filing of any Tax Returns or other documents with the Internal Revenue Service or any other taxing authority. In the event any Taxes are owed by any of the Defendants on any earnings on the funds on deposit in the Escrow Account, such amounts shall also be paid out of the Settlement Fund.

(c)     Taxes with respect to the Settlement Amount and the Escrow Account shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Settlement Fund without prior order from the Court or approval by Defendants. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). The Parties agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably

17

necessary, to carry out the provisions of this paragraph. Defendants and Defendants' Counsel shall have no liability or responsibility whatsoever if it is later determined that the Settlement Fund is a not a "qualified settlement fund."

4.4    This is not a claims-made Settlement. As of the Effective Date, the Defendants, or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

## 5.    ATTORNEYS' FEES AND EXPENSES

5.1    Lead Counsel will apply to the Court for an award from the Settlement Fund of attorneys' fees and payment of litigation expenses incurred in prosecuting the Action plus interest on such amounts at the same rate and for the same periods as earned by the Settlement Fund. Lead Counsel may also seek awards to Lead Plaintiff in connection with the prosecution of this Action.

5.2    The amount of attorneys' fees and expenses awarded by the Court and amount of awards to Lead Plaintiff is within the sole discretion of the Court. Any attorneys' fees and expenses awarded by the Court shall be paid from the Settlement Fund to Lead Counsel immediately after entry of the Order awarding such attorneys' fees and expenses and entry of the Judgment, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Fee and Expense Application, the Settlement, or any part thereof.

5.3    Any payment of attorneys' fees and expenses pursuant to ¶¶5.1–5.2 above shall be subject to Lead Counsel's obligations to make refunds or repayments to the Settlement Fund of any paid amounts, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or fails to become effective for any reason, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the award of attorneys' fees or expenses is reduced or reversed by Final non-appealable court order. Lead Counsel shall make the appropriate refund(s) or repayment(s) in full no later than thirty (30) calendar days after receiving notice of the termination of the Settlement

18

pursuant to this Stipulation, notice from a court of appropriate jurisdiction of the disapproval of the Settlement by Final non-appealable court order, or notice of any reduction or reversal of the award of attorneys' fees or expenses by Final non-appealable court order.

5.4     Any award to Lead Plaintiff shall be payable upon the Effective Date.

5.5     Defendants shall have no responsibility for, and no liability whatsoever with respect to any allocation of any attorneys' fees or expenses among Lead Counsel in the Action, or to any other Person who may assert some claim thereto, or any awards the Court may make in the Action.

5.6     Defendants shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses incurred by or on behalf of Settlement Class Members, whether or not paid from the Escrow Account. The Settlement Fund will be the sole source of payment from Defendants for any award of attorneys' fees and expenses ordered by the Court.

5.7     The procedure for and the allowance or disallowance by the Court of any Fee and Expense Application are not part of the Settlement set forth in this Stipulation, and any order or proceeding relating to any Fee and Expense Application, including an award of attorneys' fees or expenses in an amount less than the amount requested by Lead Counsel, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement set forth herein. Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement in accordance with ¶12.1 or otherwise based on the Court's or any appellate court's ruling with respect to fees and expenses in the Action.

## 6. NOTICE AND ADMINISTRATION EXPENSES

6.1     Except as otherwise provided herein, the Net Settlement Fund shall be held in the Escrow Account until the Effective Date.

6.2     Prior to the Effective Date, without further approval from Defendants or further order of the Court, Lead Counsel may cause up to $35,000 in Notice and Administration Expenses

invoiced by the Claims Administrator to be paid from the Settlement Fund. Additional sums for this purpose prior to the Effective Date may be paid from the Settlement Fund upon agreement of the Parties or order of the Court. Taxes and fees related to the Escrow Account and investment of the Settlement Fund may be paid as incurred, without further approval of Defendants or further order of the Court. After the Effective Date, without approval of Defendants, Notice and Administration Expenses may be paid upon further order of the Court. The Released Defendants' Parties shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

6.3    No later than ten (10) calendar days following the filing of this Stipulation with the Court (the "CAFA Notice Date"), Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq*. ("CAFA"), and shall confirm with Lead Counsel via email that such service was made. Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice. At least seven (7) calendar days before the Settlement Hearing, Defendants' Counsel shall file a letter with the Court providing notice that all requirements of CAFA §1715(b) have been complied with. The Parties will request that the Settlement Hearing not be scheduled until at least 90 days following the CAFA Notice Date.

## 7.    DISTRIBUTION TO AUTHORIZED CLAIMANTS

7.1    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Lead Plaintiff and Defendants.

7.2    The Claims Administrator, subject to such supervision and direction of Lead Counsel or the Court as may be necessary or as circumstances may require, shall administer the Settlement in accordance with the terms of this Stipulation, the Court-approved Plan of Allocation, and subject to the jurisdiction of the Court. Defendants and the Defendants' Counsel shall have no responsibility for (except as stated in ¶¶3.1 and 9.2 hereof), interest in, or liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the

20

Claims Administrator, and shall have no liability to the Settlement Class in connection with such administration.

7.3    The Claims Administrator shall determine each Authorized Claimant's share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice, or in such other plan of allocation as the Court may approve.

7.4    Defendants have no role in the development of, and will take no position with respect to, the Plan of Allocation. Any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Plan of Allocation is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court. Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement in accordance with ¶12.1 or otherwise based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in the Action. Defendants and Defendants' Counsel shall have no responsibility or liability for reviewing or challenging claims, the allocation of the Net Settlement Fund, the Plan of Allocation, or the distribution of the Net Settlement Fund.

7.5    Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.

7.6    If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, and other awards approved by the Court, if any, redistribute such balance in an equitable and economic fashion among Authorized Claimants who have cashed their checks. If any funds remain thereafter in the Net Settlement Fund that cannot be feasibly redistributed, and after

payment of outstanding Notice and Administration Expenses, Taxes, attorneys' fees and expenses, and other awards approved by the Court, Lead Counsel shall, after conferring with Defendants' counsel, propose a non-sectarian, non-profit to the Court for a *cy pres* distribution.

## 8. ADMINISTRATION OF THE SETTLEMENT

8.1    Any Settlement Class Member who fails to timely submit a valid Proof of Claim (substantially in the form of Exhibit 2 to Exhibit A), including appropriate documentation of claimed transactions, will not be entitled to receive any of the proceeds from the Net Settlement Fund, except as otherwise ordered by the Court, but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and all releases provided for herein, and will be barred from bringing any action against the Released Defendants' Parties concerning the Released Claims.

8.2    Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator. Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Lead Counsel deems to be *de minimis* or formal or technical defects in any Proof of Claim submitted. Defendants and Defendants' Counsel shall have no liability, obligation, or responsibility for the administration of the Settlement, the allocation of the Net Settlement Fund, or reviewing or challenging claims. Lead Counsel shall be solely responsible for designating the Claims Administrator, subject to approval by the Court.

8.3    For purposes of determining the extent, if any, to which a claimant shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)    Each claimant shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

22

(b)     All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Order of the Court. Any Settlement Class Member who fails to submit a Claim Form by such date shall be barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by Order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and all releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Released Defendants' Party. A Claim Form shall be deemed to be submitted when emailed to the Claims Administrator, or when mailed, if received with a postmark on the envelope and if mailed by first-class or overnight U.S. Mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)     Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, which shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed;

(d)     Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim Form in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing or by email, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

8.4     Each claimant who submits a Claim Form shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Settlement Class Member and the validity and amount of the claimant's claim. In connection with processing the Claim Forms, no discovery shall be allowed to be directed to any of the Released Defendants' Parties, and no discovery shall be allowed on the merits of the Action or the Settlement.

8.5     Payment pursuant to the Stipulation and Court-approved Plan of Allocation shall be deemed final and conclusive against any and all claimants. All Settlement Class Members whose claims are not approved shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein and therein, and will be barred from bringing any action against the Released Defendants' Parties concerning the Released Claims.

8.6     All proceedings with respect to the administration, processing, and determination of claims described by this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject

24

to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.

8.7     No Person shall have any claim of any kind against the Released Defendants' Parties or Defendants' Counsel with respect to the matters set forth in this section (*i.e.*, ¶¶8.1–8.8) or any of its subsections, or otherwise related in any way to the administration of the Settlement, including, without limitation, the processing of claims and investment or distributions of the Settlement Fund.

8.8     No Person shall have any claim against Lead Plaintiff or the Claims Administrator, or other agent designated by Lead Counsel, based on the distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

## 9.  TERMS OF THE PRELIMINARY APPROVAL ORDER

9.1     Concurrently with their application for preliminary approval by the Court of the Settlement contemplated by this Stipulation and promptly upon execution of this Stipulation, Lead Counsel shall apply to the Court for entry of the Preliminary Approval Order, which shall be substantially in the form annexed hereto as Exhibit A. The Preliminary Approval Order will, *inter alia*, preliminarily approve the Settlement, set the date for the Settlement Hearing, approve the form of notice, and prescribe the method for giving notice of the Settlement to the Settlement Class.

9.2     Mynaric or its counsel shall provide, or cause to be provided, Lead Counsel or the Claims Administrator, at no cost to Lead Plaintiff, the Settlement Fund, Lead Counsel, or the Claims Administrator, no later than twenty (20) business days after entry of the Preliminary Approval Order, lists of Mynaric ADS shareholders of record during the period from June 20, 2024 to October 7, 2024 in electronic format, such as Excel, to the extent such lists are reasonably available from Mynaric's stock transfer agent.

## 10. TERMS OF THE JUDGMENT

10.1    If the Settlement contemplated by this Stipulation is finally approved by the Court, Lead Counsel shall request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B.

## 11. EFFECTIVE DATE OF SETTLEMENT

11.1    The Effective Date of this Settlement shall be the first business day on which all of the following shall have occurred or been expressly waived, and is conditioned on the occurrence of all of the following events:

(a)    Execution of the Stipulation of Settlement and such other documents as may be required to obtain final Court approval of the Stipulation of Settlement in a form satisfactory to the Parties;

(b)    The Court's entry of a preliminary approval order;

(c)    The deposit of the Settlement Amount into an escrow account, as set forth in ¶3.1 herein;

(d)    Defendants not exercising their option to terminate the Settlement; and

(e)    The Court's entry of a judgment approving the Stipulation of Settlement, and the Judgment has become Final, which is when the last of the following with respect to the judgment approving the Stipulation shall occur: (i) the expiration of the time to file any motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time to appeal from the judgment without any such appeal having been filed; and (iii) if a motion to alter or amend is filed or if an appeal is filed, immediately after the determination of that motion or appeal so that the judgment is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of appeal, or otherwise, and in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of the Stipulation.

## 12. WAIVER OR TERMINATION

26

12.1    Defendants and Lead Plaintiff shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice"), through counsel, to all other parties hereto within thirty (30) calendar days of: (i) the Court's Final refusal to enter the Preliminary Approval Order in any material respect; (ii) the Court's Final refusal to approve this Stipulation or any material part of it; (iii) the Court's Final refusal to enter the Judgment in any material respect; or (iv) the date upon which the Judgment is modified or reversed in any material respect by a Final order of the Court, the United States Court of Appeals, or the Supreme Court of the United States. Lead Plaintiff shall not have the right to terminate the Settlement due to any decision, ruling, or order respecting the Fee and Expense Application or any plan of allocation.

12.2    In addition to the foregoing, Defendants shall also have the right to terminate the Settlement in the event the Opt-Out Threshold (defined below) has been reached.

12.3    Simultaneously herewith, Defendants' Counsel and Lead Counsel are executing a Confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement"). The Supplemental Agreement sets forth certain conditions under which Defendants shall have the sole option to terminate the Settlement and render this Stipulation null and void in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria (the "Opt-Out Threshold"). The Parties agree to maintain the confidentiality of the Supplemental Agreement, which shall not be filed with the Court unless a dispute arises as to its terms, or as otherwise ordered by the Court, nor shall the Supplemental Agreement otherwise be disclosed unless ordered by the Court. If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Parties will undertake to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal. Notwithstanding the foregoing, Defendants may include a redacted copy of the Supplemental Agreement with any notice provided pursuant to CAFA.

12.4    The Preliminary Approval Order, attached hereto as Exhibit A, shall provide that requests for exclusion shall be received no later than twenty-eight (28) calendar days prior to the

Settlement Hearing. Upon receiving any request for exclusion, Lead Counsel shall promptly, and in no event no later than three (3) calendar days after receiving a request for exclusion, notify Defendants' Counsel of such request for exclusion and provide copies of such request for exclusion and any documentation accompanying it by email.

12.5     In addition to all of the rights and remedies that Lead Plaintiff has under the terms of this Stipulation, Lead Plaintiff shall also have the right to terminate the Settlement in the event that the Settlement Amount has not been paid in the time period provided for in ¶3.1 above, but only if (i) Lead Counsel has notified Defendants' Counsel in writing of Lead Counsel's intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Account within fourteen (14) calendar days after Lead Counsel has provided such written notice.

12.6     If, before the Settlement becomes Final, any Defendant files for protection under the Bankruptcy Code or any similar law or a trustee, receiver, conservator, or other fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Settlement Fund by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiff the Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of that Defendant and that Defendant and Lead Plaintiff and the members of the Settlement Class shall be restored to their litigation positions immediately prior to the date of this Stipulation. All releases and the Judgment as to other Defendants shall remain unaffected.

12.7     Defendants warrant as to the payments they make pursuant to this Stipulation, that, at the time of such payment, they will not be insolvent, nor will payment render them insolvent, within the meaning of or for the purposes of the United States Bankruptcy Code, including Sections 101 and 547 thereof.

12.8    If an option to withdraw from and terminate this Stipulation and Settlement arises under any of ¶¶12.1–12.6 above: (i) neither Defendants nor Lead Plaintiff (as the case may be) will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in the sole and unfettered discretion of Defendants or Lead Plaintiff, as applicable.

12.9    With the exception of the provisions of ¶¶12.9–12.10 which shall continue to apply, in the event the Settlement is terminated as set forth herein or cannot become effective for any reason, then the Settlement shall be without prejudice, and none of its terms shall be effective or enforceable except as specifically provided herein; the Parties shall be deemed to have reverted to their respective litigation positions in the Action immediately prior to the date of this Stipulation; and, except as specifically provided herein, the Parties shall proceed in all respects as if this Stipulation and any related order had not been entered. In such event, this Stipulation, and any aspect of the discussions or negotiations leading to this Stipulation shall not be admissible in this Action, or in any other proceeding, and shall not be used against or to the prejudice of Defendants or against or to the prejudice of Lead Plaintiff, in any court filing, deposition, at trial, or otherwise. Any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

12.10   In the event the Settlement is terminated, as provided herein, or fails to become effective, any portion of the Settlement Amount previously paid into the Escrow Account, together with any earnings thereon, less any Taxes paid or due, less Notice and Administration Expenses actually incurred and paid or payable from the Settlement Fund, shall be returned to the Defendants within fifteen (15) business days after written notification of such event in accordance with instructions provided by Defendants' Counsel to Lead Counsel.

## 13. NO ADMISSION

13.1    Except as set forth in ¶13.2 below, this Stipulation, whether or not consummated, and whether or not approved by the Court, and any discussion, negotiation, proceeding, or agreement relating to the Stipulation, the Settlement, and any matter arising in connection with

settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Parties or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

(a)    do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Defendants with respect to the truth of any allegation by Lead Plaintiff and the Settlement Class, or the validity of any claim that has been or could have been asserted in the Action or in any litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Defendants or any person or entity whatsoever;

(b)    do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Defendants, or against or to the prejudice of Lead Plaintiff, or any other member of the Settlement Class as evidence of any infirmity in the claims of Lead Plaintiff, or the other members of the Settlement Class;

(c)    do not constitute, and shall not be offered or received against or to the prejudice of Defendants, Lead Plaintiff, any other member of the Settlement Class, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Defendants, Lead Plaintiff, other members of the Settlement Class, or their respective counsel, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(d)    do not constitute, and shall not be construed against Defendants, Lead Plaintiff, or any other member of the Settlement Class, as an admission or concession that

30

the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

(e)    do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Lead Plaintiff, or any other member of the Settlement Class that any of their claims are without merit or infirm or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

13.2    Notwithstanding ¶13.1 above, the Parties, and their respective counsel, may file this Stipulation or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy. The Parties may file this Stipulation or the Judgment in any action that may be brought to enforce the terms of this Stipulation or the Judgment. All Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

## 14. MISCELLANEOUS PROVISIONS

14.1    All of the exhibits to the Stipulation, except any Plan of Allocation to the extent incorporated in those exhibits, and the Supplemental Agreement, are material and integral parts hereof and are fully incorporated herein by this reference.

14.2    The Parties intend the Settlement to be the full, final, and complete resolution of all claims asserted or that could have been asserted by the Parties with respect to the Released Claims and Released Defendants' Claims. Accordingly, the Parties agree not to assert in any forum that the Action was brought, prosecuted, or defended in bad faith or without a reasonable basis. The Parties and their respective counsel agree that each has complied fully with Federal Rule of Civil Procedure 11 in connection with the maintenance, prosecution, defense, and settlement of the Action and shall not make any application for sanctions, pursuant to Rule 11 or other court rule or statute, with respect to any claim or defense in this Action. The Parties agree

that the amount paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties and their respective counsel and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

14.3    This Stipulation, along with its exhibits and the Supplemental Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by counsel for the Parties hereto, or their successors, that are materially and adversely affected by the modification, amendment, or waiver.

14.4    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

14.5    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and any expenses and implementing and enforcing the terms of this Stipulation.

14.6    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

14.7    This Stipulation, its exhibits, and the Supplemental Agreement constitute the entire agreement among the Parties concerning the Settlement and supersedes any and all prior agreements, written or oral, between the Parties. No representations, warranties, or inducements have been made concerning this Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. In the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit to the Stipulation, the terms of the Stipulation shall govern.

14.8    Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

14.9     Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

14.10     All designations and agreements made, or orders entered during the course of the Action relating to the confidentiality of documents or information shall survive this Stipulation. Within 30 days of the final disposition of this Action, all documents produced or shared in this Action on a confidential basis and all copies thereof, shall be promptly returned to the producing person, or, destroyed.

14.11 This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures sent by facsimile or via email in pdf format shall be deemed originals.

14.12     This Stipulation shall be binding when signed, but the Settlement shall be effective upon the entry of the Judgment and the payment in full of the Settlement Amount, subject only to the condition that the Effective Date will have occurred.

14.13     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

14.14     The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

14.15     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties, and all Parties have contributed substantially and materially to the preparation of this Stipulation.

14.16     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement document, warrant, and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be

33

taken pursuant to the Stipulation to effectuate its terms. Mynaric represents that it reasonably believes that the Settlement documented herein is permissible under its restructuring and is not subject to clawback in those proceedings.

14.17   The Parties and their respective counsel agree to cooperate fully with one another in promptly applying for preliminary approval by the Court of the Settlement and for the scheduling of a Settlement Hearing, and to agree promptly upon and execute all such other documentation as reasonably may be required to obtain Final approval by the Court of the Settlement. The Parties and their respective counsel further agree to cooperate in good faith and coordinate regarding the manner in which to present the motions for preliminary and final approval to the Court.

14.18   Except as otherwise provided herein, the Parties shall bear their own costs.

14.19   Mynaric may, in its discretion, publicly announce or otherwise disclose the terms of this Settlement. Until such disclosure is made by Mynaric, the Parties agree that, other than disclosures required by law, there will be no public announcements regarding the Settlement. This provision does not affect Lead Plaintiff's notice requirements under the Private Securities Litigation Reform Act, Federal Rule of Civil Procedure 23(e), or any other applicable legal requirements.

**IN WITNESS WHEREOF**, the Lead Plaintiff and Defendants have caused this Stipulation to be executed, by their duly authorized attorneys, as of April 21, 2025.

Respectfully Submitted,

Dated: April 21, 2025                          **POMERANTZ LLP**

                                               Joshua B. Silverman
                                               Diego J. Martinez-Krippner
                                               10 South La Salle Street, Suite 3505
                                               Chicago, Illinois 60603
                                               Tel.: (312) 377-1181
                                               Fax: (312) 377-1184
                                               jbsilverman@pomlaw.com
                                               dmartinezk@pomlaw.com

                                               Jeremy A. Leiberman
                                               J. Alexander Hood II
                                               600 Third Avenue, 20th Floor
                                               New York, New York 10016
                                               Tel: (212) 661-1100
                                               Fax: (212) 661-8665
                                               jalieberman@pomlaw.com
                                               ahood@pomlaw.com

                                               *Lead Counsel for Lead Plaintiff*
                                               *(Settlement Class Counsel, as defined herein)*


                                               **BRONSTEIN, GEWIRTZ &**
                                               **GROSSMAN, LLC**

                                               Peretz Bronstein
                                               60 E 42nd Street, Suite 4600
                                               New York, New York 10165
                                               Tel.: (212) 697-6484
                                               Fax: (212) 697-7296
                                               peretz@bandg.com

                                               *Additional Counsel for Lead Plaintiff*

35

**SULLIVAN & CROMWELL LLP**

David M.J. Rein
Julia A. Malkina
Jared D. Ham
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Attorneys for Defendants Mynaric AG,*
*Mustafa Veziroglu, and Stefan Berndt-von*
*Bülow*
*(Defendants' Counsel, as defined herein)*

36