UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

ALEX TROSTORFF,

        *Plaintiff*,

  - against -

MYNARIC AG, et al.,

        *Defendants*.

------------------------------------X

**MEMORANDUM & ORDER**

No. 24-cv-7602(KAM)(CLP)

**KIYO A. MATSUMOTO, United States District Judge:**

    Lead Plaintiff Alex Trostorff ("Lead Plaintiff" or "Trostorff")[1] moves for final approval of a class action settlement on behalf of himself and all those similarly situated (the "Settlement"). Presently before the Court are Lead Plaintiffs' (1) Motion for Final Approval of the Class Action Settlement (ECF No. 31-1, "Final Approval Mot."); and (2) Motion for Attorneys' Fees (ECF No. 32-1, "Fees Mot."). The Settlement was preliminarily approved on June 2, 2025. (ECF No. 30.) On September 16, 2025, the Court held a fairness hearing (the "Fairness Hearing") regarding final approval of the Settlement. (*See* Minute Entry dated September 16, 2025.) For the reasons stated herein and on the record during the Fairness Hearing, Lead Plaintiff's Motion

---

[1] The Court notes that, although Mr. Trostorff's name is spelled "Torstorff" in the complaint, Lead Counsel has since confirmed that the spelling indicated in the complaint is a typographical error and the correct spelling is "Trostorff." (ECF No. 37.)

for Final Approval of the Class Action Settlement and Motion for Attorneys' Fees are **GRANTED.**

## BACKGROUND

### I. Factual Background

On October 30, 2024, Lead Plaintiff Alex Trostorff filed the instant securities class action on behalf of himself and others similarly situated against defendants Mynaric AG ("Mynaric"), Mustafa Veziroglu, and Stefan Berndt-Von Bülow (collectively, "Defendants"). (ECF No. 1, "Complaint.") The Complaint alleges that, between June 20, 2024 and October 7, 2024 (the "Class Period"), Defendants made materially false and misleading statements about Mynaric's business, operations, and prospects in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. (Complaint ¶¶ 1, 4.)

These materially false misstatements or omissions included, *inter alia*, (1) lower than expected production yields and component shortage and production delays for Mynaric's product; (2) the material negative impact relating to the aforementioned production issues; (3) the likelihood of Mynaric meeting its own previously issued financial guidance; (4) business and financial prospects being overstated; and (5) materially false and misleading public statements as a result of all the above. (Complaint ¶ 4.)

Beginning on August 20, 2024, certain negative press releases

2

were published, causing the price of Myranic's American Depository Share ("ADS") to fall from a price of $4.15 per ADS to $1.53 per ADS. (Complaint ¶¶ 7, 9, 11, 34, 38.)

## II. Procedural History

On October 30, 2024, Lead Plaintiff filed a class action complaint against Defendants. (*See* ECF No. 1, "Complaint.") On February 7, 2025, Defendants disclosed that it had entered restructuring proceedings. (Final Approval Mot. at 4.) Upon further investigation, Lead Counsel confirmed that these restructuring proceedings would almost certainly wipe out both Myranic's liability in this action and any equity interests in the ADS at issue in this action. (*Id.*) Lead Counsel then assessed whether there was any strong basis to object to the restructuring and determined that there was not. (*Id.* at 4-5.) Lead Plaintiff and Lead Counsel also consulted with an econometric expert who concluded that a successful verdict on all claims in this action could result in damages of only approximately $797,000. (*Id.* at 17.) The parties then engaged in settlement discussions.

On April 21, 2025, the parties reached a settlement in this action for $300,000, and Lead Counsel filed for preliminary approval on April 27, 2025. (*Id.*) On June 2, 2025, the Court preliminarily approved the settlement. (ECF No. 30.) The settlement class is defined as follows: "all persons and entities other than Defendants that purchased or otherwise acquired Mynaric

3

American Depository Shares between June 20, 2024 and October 7, 2024" (the "Settlement Class").[2] (*Id.* ¶ 2.)

On June 11, 2025, the Claims Administrator established a website for the settlement, which contains the Notice and Claim Form, the Postcard Notice, the Preliminary Approval Order, and the Stipulation of Settlement with exhibits. (ECF No. 33-2, "Craig Decl." ¶ 11.) On that same day, the Claims Administrator mailed and e-mailed notification of the settlement to a master list containing banks, brokerage companies, mutual funds, insurance companies, pension funds, and money managers. (*Id.* ¶ 4.) This notification requested that the recipients respond and request copies of the Postcard Notice for any of their customers, and to provide the Claims Administrator with a list of names, mailing addresses, e-mail addresses (if any), of any beneficial purchasers or owners so the Claims Administrator could also mail and e-mail the Notice and Claim Form directly to the purchasers and owners. (*Id.*) The Claims Administrator then mailed, by first-class mail, the Postcard Notice to 83 individuals and/or entities provided by Lead Counsel. (*Id.* ¶ 5.) To date, 568 Postcard Notices have been mailed and 2,338 e-mails have been sent to potential Settlement Class Members. (*Id.* ¶¶ 5, 6.) Of this number, 33 were returned

---

[2] Transactions in Mynaric ordinary shares are not part of the Settlement and does not qualify a person to be a Settlement Class Member. Also excluded from the Settlement Class are all current and former officers, directors, and management and supervisory board members of Mynaric, and immediate family members of such persons. (ECF No. 30 ¶ 2.)

4

as undeliverable, of which 2 were forwarded, 31 were "skip-traced" to obtain updated addresses, and one was re-mailed.  (*Id.* ¶ 8.) On June 27, 2025, the Summary Notice of Settlement was published electronically on GlobeNewswire.  (*Id.* ¶ 9.)

As of September 5, 2025, the Claims Administrator has received no objections to the Settlement, no requests for exclusions, and 293 claims.  (*Id.* ¶¶ 12, 13; ECF No. 34-1, "Second Craig Decl." ¶¶ 7, 8, 9.)  The Claims Administrator noted that, because the audit process on the claims is currently still ongoing, certain claims may be later found to be incomplete or invalid.  (*Id.*)  Thus, the finalized number of valid claims is not yet determined.  (*Id.*)

At the Fairness Hearing, Lead Counsel confirmed that, as of September 16, 2025, there remains 293 claims, no requests for exclusion, and no objections to the settlement.

## DISCUSSION

For the reasons set forth below, the Court finds the Settlement to be fair, reasonable and adequate, satisfying the factors articulated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), and Federal Rule of Civil Procedure 23(e)(2).

I.  **Motion for Final Approval of Class Action Settlement**

   a.  ***Grinnell Factors***

To evaluate the substantive fairness of a settlement, the

5

Second Circuit sets forth nine factors:

> (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of the attendant risk of litigation.

*Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974).  The Settlement here satisfies the *Grinnell* factors.  First, Lead Counsel has considered the complexity and expense of a prolonged litigation, and has been spared the work and risk associated with surviving a motion to dismiss, conducting extensive discovery, surviving a motion for summary judgment, and prevailing at trial.  (Final Approval Mot. at 10.)  Second, the reaction of the class to the Settlement is extremely positive.  As Lead Counsel noted in its papers and at the Fairness Hearing, there are no objections and no requests for exclusion from the class.  (*Id*. at 11-12.)  Third, Myranic's ongoing restructuring abroad adds further complexity and risk to this action, including the discharge of Myranic's liabilities, which Lead Plaintiff and Lead Counsel have considered.  (*Id*. at 10.)  Fourth, any award at trial and upheld on appeal would have been difficult to collect against the individual defendants who

6

reside in Europe – particularly because the extent and location of their assets is largely unknown. (*Id.* at 11.)  Fifth, Lead Counsel and Lead Plaintiff have conducted a thorough investigation of the strengths and weaknesses of the claims, and determined that even if they obtained a successful verdict on all claims, they could only recover aggregated damages of approximately $797,000.  (*Id.* at 1.)  The Settlement Amount ($300,000) represents approximately 37.6% of the maximum estimated recovery, which is above the typical recovery rate that courts have deemed reasonable in other cases. (*Id.* at 17.); *see, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07-cv-7895 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions . . . have ranged from 3% to 7% of the class members' estimated losses"); *In re Merrill Lynch & Co., Ins. Rsch. Reps. Sec. Litig.*, No. 02-MDL-1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations.")

    b.    *Rule 23(e)(2) Factors*

The Settlement also meets all fairness requirements provied in Federal Rule of Civil Procedure 23(e)(2).  Rule 23(e)(2) enumerates four factors that courts should consider:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's-

7

> length; (C) the relief provided for the class was adequate; and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). For substantially the same reasons as discussed above, these factors are also satisfied. Moreover, Lead Plaintiff was represented by a highly-qualified law firm, which was familiar with the legal and factual strengths and weaknesses of the case. (Final Approval Mot. at 8-9.) Additionally, as is standard in securities class actions, the parties have entered into a confidential Supplemental Agreement, which the Court has reviewed *in camera*, that provides Defendants with the opportunity to terminate the Settlement if a certain number of class members meeting certain criteria exclude themselves from the class. (*Id.* at 18.) Finally, as delineated in Lead Plaintiff's plan of allocation, Settlement Class members are treated equally and will be entitled to recover on a *pro rata* basis based on the size of their losses. (*Id.* at 19.) Accordingly, the Court finds the Settlement is fair and satisfies both the *Grinnell* factors and Rule 23(e)(2).

**II. Lead Counsel's Motion for Attorneys' Fees, Costs, and an Award to Lead Plaintiff**

    **a.** *Attorneys' Fees in the Amount of 33 1/3% of the Settlement Fund*

Lead Counsel requests attorneys' fees in the amount of 33 1/3% of the gross Settlement fund, or $100,000. (Fee Mot. at 1.) Defendants take no position on this request. Lead Counsel attest

8

that they have devoted, in aggregate, 140.63 hours in the prosecution of this matter, with a lodestar amount of $122,623. (*Id.* at 1.; ECF No. 33, "Silverman Decl." ¶¶ 60, 61.) The Court has reviewed Lead Counsel's contemporaneous billing records, (ECF No. 35), comprising the lodestar calculation amount of $122,623, and finds Lead Counsel's billing entries to be reasonable and appropriate. Thus, on a lodestar cross-check, the requested fee award would fall below what Lead Counsel could have earned through standard billing rates.

In *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit identified several factors in assessing a reasonable fee award:

> (1) time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risks of the litigation; (4) the requested fee in relation to the settlement; (5) the quality of representation; and (6) public policy considerations.

*Id.* For the reasons stated in the preceding sections, Lead Counsel asserts that all *Goldberger* factors weigh in favor of the requested fee award. (Fees Mot. at 6-17.) Lead Counsel expended approximately 140 hours on this litigation and has obtained a successful outcome for Lead Plaintiff and all those similarly situated. These hours included a diligent investigation into its claims, which uncovered the issues relating to Myranic's restructuring. Lead Counsel is also assuming risk of non-payment

9

with this case, given the contingency arrangement and the risks associated with this case. For example, the restructuring process threatened to discharge Myranic's liabilities, certain concerns regarding personal jurisdiction over the individual defendants, issues regarding restructuring and collection due to international defendants, and the general difficulties of proving securities cases – particularly the element of scienter – to a jury. (*See generally* ECF No. 32-1.)

Lead Counsel was also opposed by able and highly experienced attorneys from Sullivan & Cromwell LLP. (Fees Mot. at 12.) Despite experienced and highly qualified opposing counsel, Lead Counsel was able to obtain a positive settlement, both in terms of the amount of recovery and response to the settlement. As noted above, there are no objections to this settlement and no class members have requested exclusion. (*See* Craig Decl. ¶¶ 12, 13; Second Craig Decl. ¶¶ 7, 8.) Accordingly, due to the risk factors associated with this case and the lodestar cross-check, the Court finds a fee award of 33 1/3% of the Settlement Fund to be reasonable.

### b. *Reimbursement of $14,551.64 of Costs to Lead Counsel*

Lead Counsel requests reimbursement of costs in the amount of $14,551.64. (Fees Mot. at 17-18; Silverman Decl. ¶¶ 2, 72, 75.) The Second Circuit has held that counsel is entitled to reimbursement from the common fund for reasonable litigation

10

expenses that would have been reimbursed by an hourly-billed client. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 238 (2d Cir. 1987); Fed. R. Civ. P. 23(h). The expenses for which Lead Counsel seeks to be reimbursed include filing fees, legal research, copy and clerical fees, expert fees, private investigator fees, PSLRA press releases, and travel, lodging and meals. (Silverman Decl. ¶ 75.) Approximately 41% of the total costs were expended on experts in this case, and all costs were approved by Lead Plaintiff. (*Id.* ¶¶ 75, 76, 77.) Lead Counsel also notes that class members have been apprised that costs may be up to $20,000, and no objections have been filed. (*Id.* ¶ 78.) Accordingly, the Court finds that these costs are reasonable and Lead Counsel may be reimbursed for $14,551.64 in costs.

    c. *Compensatory Award of $5,000 to Lead Plaintiff*

Lead Plaintiff is seeking a compensatory award of $5,000. (Fees Mot. at 18-19.) The Private Securities Litigation Reform Act ("PSLRA") permits lead plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]." 15 U.S.C. § 78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first

11

place." (Fees Mot. at 18.) Lead Plaintiff and Lead Counsel attest that Lead Plaintiff reviewed case materials, conferred more than a dozen times with counsel about case developments, consulted with counsel about the settlement, and reviewed and authorized settlement proposals. (*See* ECF No. 33-1, the "Trostroff Decl.") Lead Counsel has also cited several cases where similar awards have been given to Lead Plaintiff. *See, e.g.*, *Martinek v. Amtrust Financial Serv., Inc.*, No. 19-cv-8030 (KPF), 2022 WL 16960903 at *1 (S.D.N.Y. Nov. 16, 2022) (awarding lead plaintiff a compensatory award of $15,000); *Lea v. Tal Educ. Grp.*, No. 18-cv-5480 (KHP), 2021 WL 5578665, at *1 (S.D.N.Y. Nov. 30, 2021) (awarding lead plaintiff a compensatory award of $7,500). To compensate Lead Plaintiff for the extra time and effort spent bringing this class action to its conclusion, the Court finds that a relatively modest award of $5,000 is reasonable. Accordingly, Lead Plaintiff's request for a $5,000 compensatory award is granted.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff's Motion for Final Approval of the Class Action Settlement and Lead Counsel's Motion for Attorneys' Fees are **GRANTED**. Final judgment will enter in a forthcoming order, and the Clerk of Court is respectfully directed

to close this case.

**So ordered.**

Dated:    September 22, 2025    _____
         Brooklyn, New York     **Kiyo A. Matsumoto**
                                United States District Judge
                                Eastern District of New York